# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA**,

       Plaintiff,

   vs.                               No. CR 06-2605 MCA

**RICKY BARKSDALE GREEN**,

       Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the *Government's Motion in Limine* [Doc. 70] filed on August 14, 2007, and the following motions filed by Defendant Ricky Barksdale Green on October 5, 2007:  (1) the *Motion to Suppress Statements* [Doc. 90], (2) the *Motion to Compel Discovery* [Doc. 91], (3) the *Motion for In Camera Review* [Doc. 92], and (4) the *Motion to Suppress Physical Evidence* [Doc. 93].  The Court held a hearing on these motions in Albuquerque, New Mexico, on November 1, 2007.  Having considered the parties' submissions, the applicable law, the evidence and arguments of counsel presented at the hearing, and being fully advised in the premises, the Court denies both the Government's motion in limine and the Defendant's motions based upon the findings of fact and conclusions of law set forth below.

I.      **FINDINGS OF FACT**

1.      On August 31, 2006, agents of the Pecos Valley Drug Task Force ("the PVDTF")

executed a search warrant at a residence occupied by Defendant Ricky Green, described as

a pinkish-cream, single-wide mobile home with tan trim, which is located at the south end

of Townsend Road, on the west side of Townsend Road, in Carlsbad, Eddy County, New

Mexico.

2.      The agents obtained the warrant as a result of an affidavit that Carroll Caudill, a

sergeant with the Eddy County Sheriff's Office, prepared and presented to State District

Court Judge Jane Shuler Gray on August 30, 2006.

3.      The affidavit that Agent Caudill prepared includes the following details:

   a.   In the course of its investigation into the trafficking of crack cocaine and
        methamphetamine, the PVDTF received information from a confidential
        informant that such trafficking was occurring at Defendant's residence;

   b.   The confidential informant, identified in the affidavit as CI1, was "of the
        criminal and drug culture" and had proven reliable in several previous
        controlled purchases of illegal drugs;

   c.   CI1 had participated in previous drug investigations with Eddy County and
        had assisted in identifying individuals involved with drug trafficking, as well
        as locations where drugs were being sold;

   d.   CI1's information had been corroborated by other credible and reliable
        informants and PVDTF agents;

   e.   CI1's information had led to search warrants which, in turn, resulted in the
        arrest and conviction of drug traffickers;

   f.   Within the 72 hours preceding the application for the warrant, CI1 had
        engaged in a controlled purchase of crack cocaine from Defendant at his
        residence on Townsend Road;

      g.      Prior to the controlled purchase, Agent Caudill searched CI1 to ensure CI1 was free of contraband and money.  Agent Caudill then provided CI1 with PVDTF funds to purchase drugs.  Agent Caudill kept CI1 under constant surveillance as CI1 went to Defendant's residence on Townsend Road.  After the purchase, CI1 turned over crack cocaine to Agent Caudill, who conducted a post-purchase search of CI1 to ensure that CI1 was free of drugs and/or money;

      h.      CI1 had seen Defendant in possession of a firearm at the Townsend Road residence, and Agent Caudill knew that because Defendant was a convicted felon, his possession of a firearm was a crime;

      i.      Agent Caudill knew from a criminal complaint that on July 22, 2006, Defendant was alleged to have committed aggravated battery when, armed with a gun, he attempted to collect a drug debt and threatened to kill the victim if she told police; and

      j.      Agent Caudill knew that individuals involved in drug trafficking both (1) maintain ledgers, records, photographs, cell phones, drug proceeds, and other items; and (2) keep small amounts of controlled substances on them to sell to prospective buyers.

[Ex. 1, Attachment C to Doc. 41-2.]

4.      The affidavit identifies with particularity the items to be seized in the search (including firearms and any and all controlled substances, including but not limited to, crack cocaine and methamphetamine) as well as the place to be searched  (a single-wide, pinkish cream with tan trim mobile home, located at the south end of Townsend Road, on the west side of the road, Carlsbad, Eddy County, New Mexico, and Ricky Barksdale Green). [Ex. 1, Attachment B to Doc. 41-2.]

5.      The affidavit specifically requested authorization to seize "[a]ny container which could be used in the concealment, transportation, distribution, or sale of any controlled substance."  [Ex. 1, Attachment B to Doc. 41-2.]

6.      Items specified elsewhere in the affidavit (including, but not limited to, controlled substances, written or electronic records of controlled-substance sales; monies or other financial instruments resulting from such sales; and papers, receipts, notes, books, and ledgers tending to show the sale of controlled substances) are capable of being concealed in safes or other locked containers within a residence.

7.      Based on Agent Caudill's affidavit, Judge Gray approved the warrant permitting the executing agents to search and seize the property specifically identified therein on August 31, 2006. [Ex. 1 to Doc. 41-2].

8.      Based on the information recited in the search-warrant affidavit concerning Defendant's possession of a firearm and his criminal history, the PVDTF agents decided to initiate their execution of the search warrant by means of a tactical entry.

9.      At the time Agent Caudill and other PVDTF agents made their tactical entry into the Townsend Road residence in order to execute the search warrant, Defendant Ricky Green was located in the bedroom on the far west end of the residence.

10.     In accordance with the PVDTF's standard procedure for a tactical entry, the agents immediately detained and handcuffed Defendant.

11.     The agents' purpose for detaining and handcuffing Defendant was to secure the residence until its occupants could be identified.

12.     Soon after Defendant was initially detained in this manner, the agents escorted him to the living room of the residence, where Agent Caudill advised Defendant of each of his rights pursuant to Miranda v. Arizona, 384 U.S. 436 (1966), before questioning him.

13.     Instead of responding to Agent's Caudill's <u>Miranda</u> advice, Defendant stated to Agent Caudill that he wanted to see the search warrant.

14.     Agent Caudill promptly served Defendant with a copy of the search warrant documents, including the warrant itself, the supporting affidavit, and its attachments.

15.     Upon reviewing the search warrant documents, Defendant voluntarily made a statement denying that he sold anything to a "CI" or confidential informant; this statement was not in response to questioning by Agent Caudill or any of the other agents executing the search warrant.

16.     After advising Defendant of his <u>Miranda</u> rights and listening to his statements about the search warrant, Agent Caudill asked Defendant (1) if anybody else lived in the Townsend Road residence, and (2) where the keys to Defendant's vehicles were located.

17.     In response to the first question, Defendant voluntarily made a statement to the effect that:  "I don't know.  I just crash here."

18.     In response to the second question, Defendant voluntarily indicated that the keys were on the kitchen counter.

19.     As of the time that he made the above statements, Defendant never told Agent Caudill or the other agents executing the search warrant that he did not want to talk to any of them.

20.     As of the time that he made the above statements, Defendant never told Agent Caudill or the other agents executing the search warrant that he wanted to talk to an attorney.

21.     As of the time that he made the above statements, Defendant never expressly invoked or asked questions concerning his <u>Miranda</u> rights.

22.    The PVDTF agents subsequently used one or more keys found on the kitchen counter to open one or more safes found in the Townsend Road residence; the agents did not obtain a separate or additional search warrant for these safes.

23.    As a result of the execution of the search warrant, agents seized, among other things, firearms; over $4,000 in U.S. currency; crack cocaine; methamphetamine; and marijuana. [Ex. 1 to Doc. 41-2]

24.    In response to a motion [Doc. 36] filed by Defendant's prior counsel, Albert Granger, Esq., the Court held a hearing concerning the search warrant and related matters on June 26, 2007.  [Doc. 44.]

25.    At the hearing on June 26, 2007, the parties were afforded the opportunity to elicit testimony from Agent Caudill regarding his preparation and execution of the search warrant.

26.    In a *Memorandum Opinion and Order* [Doc. 51] filed on July 16, 2007, the Court made findings of fact concerning Agent Caudill's testimony at the hearing on June 26, 2007, and denied Defendant's motion; those prior findings are incorporated herein except as modified or supplemented below.

27.    At the Call of the Calendar on August 22, 2007, Defendant terminated his former counsel, and the Court permitted Mr. Granger to withdraw in an *Order* [Doc. 84] filed on August 24, 2007.

28.    Upon Mr. Granger's termination and withdrawal, the Court appointed Assistant Federal Public Defender Charles Harwood to represent the Defendant [Doc. 83], and on

October 5, 2007, Mr. Harwood filed four motions which are the subject of this *Memorandum Opinion and Order.* [Doc. 90, 91, 92, 93.]

29.     The Court held a hearing on these four motions on November 1, 2007, at which Agent Caudill again testified.

30.     Prior to or during the hearing on November 1, 2007, the Government produced to Defendant (1) tape recordings of telephone calls allegedly made by the Defendant during the first week of September 2007, and (2) the PVDTF's written procedures for using a confidential informant in a controlled buy.

31.     In his testimony at the hearing on November 1, 2007, Agent Caudill credibly testified that he recorded the serial numbers of the currency given to the CI for use in the controlled buy, but that he later lost the sheet of paper on which he had written the serial numbers; consequently, the Government has no record of whether the currency used in the controlled buy was found among the currency later seized during the execution of the search warrant at the Townsend Road residence.

32.     In his testimony at the hearing on November 1, 2007, Agent Caudill further testified that the controlled substance retrieved from the CI after the controlled buy was smaller than a pea, and that this controlled substance was tagged into evidence and maintained in the agent's custody; the Government did not, however, produce copies of the police report or evidence logs that the agent prepared in conjunction with the controlled buy.

33.     In his testimony at the hearing on November 1, 2007, Agent Caudill also clarified some aspects of the search procedures which he had previously described in his testimony at the prior hearing on June 26, 2007.

34.     In particular, Agent Caudill clarified that he searched the CI both before and after the controlled buy.

35.     Agent Caudill also described in further detail the procedures he followed in searching the CI; these procedures involved (1) a "pat down" search of the CI's body, which included running the back of the hand across the clothed crotch area, (2) requiring the CI to pull on and shake the waistband, shirt, and/or bra as he or she is bending over so as to allow the agent to see if anything falls out of the CI's clothing, and (3) searching the inside of the CI's mouth, including under the tongue and between the teeth and the lips and jaw area.

36.     Agent Caudill did not search the inside of the CI's other body cavities, and in this instance he also did not search inside the CI's shoes because the CI was wearing open "flip flop" sandals at the time of the controlled buy.

37.     Agent Caudill did not deliberately include false information in his search-warrant affidavit nor did he act with reckless disregard for the truth in preparing that document.

38.     The search warrant for the Townsend Road residence was supported by probable cause to believe that evidence of crime relating to controlled substances and firearms would be found therein.

39.     The PVDTF agents properly executed the search warrant and advised Defendant of his Miranda rights before questioning him.

40.     Defendant's statements about the search warrant, as well as his responses to Agent Caudill's questions about where the keys to his vehicles were located and who else lived in the residence, were voluntarily made and were not taken in violation of Defendant's <u>Miranda</u> rights.

## II.     <u>LEGAL ANALYSIS AND CONCLUSIONS OF LAW</u>

### A.     <u>Defendant's Motion to Suppress Statements</u>

The Court first addresses Defendant's motion to suppress the statements that he made in the presence of Agent Caudill and/or the other PVDTF agents during the execution of the search warrant.  This motion requires the Court to determine whether Defendant invoked or waived his rights under <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

The Government bears the burden of proving that Defendant knowingly and voluntarily waived his <u>Miranda</u> rights, and the legal framework for deciding that issue is set forth in <u>United States v. Nelson</u>, 450 F.3d 1201, 1210-12 (10th Cir. 2006).  Under this framework, the Court must first decide whether the statements in question were made in response to custodial interrogation or its equivalent.  With respect to those statements that do fall within the context of custodial interrogation or its equivalent, the Court must then determine whether Defendant was advised of his <u>Miranda</u> rights before making such statements.  If he was so advised, then the Court's final task is to determine whether Defendant gave notice to his interrogators that he was invoking his <u>Miranda</u> rights or whether the interrogators could reasonably infer from his words and actions that he was knowingly

and voluntarily waiving these rights when he made the statement in question.  See Nelson, 450 F.3d at 1212.

It is undisputed that Defendant was in the custody of the PDVTF agents at the time he made the statements at issue here.  I also find that Defendant's statements about the location of the keys to his vehicles and who lived in the residence were responsive to Agent Caudill's questioning and therefore fit within the context of custodial interrogation.  See id. at 1211.  Defendant's statements about the search warrant, however, were not the result of questioning or other police tactics designed to prompt an incriminating response from him, and Agent Caudill gave Defendant each of the four warnings required under Miranda before Defendant made any of the above statements.  See id.

Therefore, the dispositive question is whether Defendant waived or invoked his Miranda rights before making the statements at issue here.  Citing Davis v. United States, 512 U.S. 452 (1994), and its progeny, the Tenth Circuit reasoned "that custodial interrogation may continue unless and until the suspect *actually invokes* his right to counsel [or to remain silent]; ambiguous or equivocal statements that *might* be construed as invoking the right to counsel do not require the police to discontinue their questioning."  Nelson, 450 F.3d at 1212.  As in Nelson, Defendant's words and behavior in response to Agent Caudill's Miranda advice and questioning are somewhat "ambiguous or equivocal."  Nelson, 450 F.3d at 1212.  Changing the subject from the Miranda warnings to the search warrant, or responding to some questions and not others, "*might* be construed as an indication of a desire to discontinue a police interview."  Id.  But from an objective statement, such words and

-10-

behavior are "not sufficiently clear that a reasonable police officer in the circumstances would understand it to be an invocation of a <u>Miranda</u> right." <u>Id.</u>  On the contrary, a reasonable police officer might just as easily construe Defendant's expressed desire to review and comment on the search warrant as an indication that he wished to continue the conversation.

For these reasons, I determine that Defendant did not actually invoke his <u>Miranda</u> rights before making the statements in question, and that there was no <u>Miranda</u> violation which could provide a basis for suppressing these statements under the exclusionary rule. I also note that even if the statements themselves were subject to the exclusionary rule, the Supreme Court has held that the "fruit of the poisonous tree" doctrine does not apply to non-testimonial evidence (<i>e.g.</i>, the keys, the safes, or the contents of the safe) found as a result of a statement taken in violation of <u>Miranda</u>.  <u>See</u> <u>United States v. Patane</u>, 542 U.S. 630, 634 (2004).  Therefore, the issue of Defendant's <u>Miranda</u> rights cannot serve to preclude the Government from introducing any physical evidence at trial.

Nevertheless, I caution counsel to use care in eliciting testimony or commenting about Defendant's post-<u>Miranda</u> statements at trial in order to avoid references to any Fifth Amendment rights which the Defendant exercised.  The focus must be on what the Defendant said, not on what he failed to say.  <u>See</u> <u>Nelson</u>, 450 F.3d at 1212-13.  Accordingly, the Government may not elicit testimony or comment as to any instances in which the Defendant did not answer or respond to a particular question.

**B.**     **Defendant's Motion to Suppress Physical Evidence**

The remaining three motions filed on October 5, 2007, call for the Court to revisit the issues previously addressed in the *Memorandum Opinion and Order* [Doc. 51] denying the *Motion to Suppress* [Doc. 37] filed on May 22, 2007.  The earlier motion questioned whether the search warrant regarding the Townsend Road residence was based on probable cause.  The more recent series of motions attempts to go beyond the four corners of the warrant itself by alleging that Agent Caudill deliberately included false information, or acted with reckless disregard for the truth, in preparing the search-warrant affidavit.

In this context, the Government does not bear the burden of proving that the search is "reasonable" under the Fourth Amendment; rather, the search conducted pursuant to the warrant is presumed to be reasonable under the Fourth Amendment, and it is Defendant's burden to prove otherwise.  See United States v. Carhee, 27 F.3d 1493, 1496 & n.3 (10th Cir. 1994).

A defendant does not automatically have the right to a full evidentiary hearing in order to meet this burden.  The defendant must first meet the procedural requirements articulated in Franks v. Delaware, 438 U.S. 154, 171-72 (1978).  Under Franks, an evidentiary hearing is not required unless the defendant alleges deliberate falsehood or reckless disregard for the truth on the part of the affiant, and those allegations are accompanied by a sufficient offer of proof.  See United States v. Artez, 389 F.3d 1106, 1116 (10th Cir. 2004).

"Allegations of negligence or innocent mistake" are insufficient to warrant an evidentiary hearing under Franks, see id., because "[i]t is not enough to show that the

informant lied to an unsuspecting affiant, or that an affiant's negligence or innocent mistake resulted in false statements in the affidavit." United States v. Owens, 882 F.2d 1493, 1499 (10th Cir. 1989) (citing United States v. Orr, 864 F.2d 1505, 1508 (10th Cir.1988), and United States v. Bloomgren, 814 F.2d 580, 584 (10th Cir.1987)).  Thus, "affidavits submitted in support of a Franks-type hearing which attack the informant's reliability and the correctness of the informant's statements 'do not meet the substantial preliminary showing of falsity required by Franks.'"  Id. at 1499-1500 (quoting United States v. Barrera, 843 F.2d 1576, 1579 (10th Cir.1988)).

Courts in other circuits have reached similar conclusions:  "'[T]he fact that a third party lied to the affiant, who in turn included the lies in a warrant affidavit, does not constitute a Franks violation.  A Franks violation occurs only if the *affiant* knew the third party was lying, or if the affiant proceeded in reckless disregard of the truth.'"  United States v. McAllister, 18 F.3d 1412, 1417 (7th Cir.1994) (quoting United States v. Pritchard, 745 F.2d 1112, 1119 (7th Cir.1984)).  These courts have rejected requests for a Franks hearing where the defendant challenges "only the veracity of statements made by [the informant], not statements made by the warrant affiant Officer."  United States v. Jones, 208 F.3d 603, 607 (7th Cir. 2000); see generally 2 Wayne R. LaFave, *supra*, § 4.4(b), at 539 (collecting cases).

To support an allegation regarding the affiant's deliberate falsehood or reckless disregard for the truth, a defendant should provide affidavits of witnesses or satisfactorily explain their absence.  Such affidavits or explanations should include a statement of supporting reasons, not merely conclusory denials.  In addition, a defendant seeking an

evidentiary hearing must show that, after the challenged portions of the affidavit are stricken, the remaining content of the affidavit is not sufficient to support a finding of probable cause. See Artez, 389 F.3d at 1116; Franks, 438 U.S. at 171.

In this instance, Defendant's recent motion attempts to make this showing through a few citations to the transcript of Agent Caudill's testimony at the prior suppression hearing and an affidavit from a retired police officer who had no involvement in the search warrant or investigation at issue here.[1]  In particular, Defendant's motion cites Agent Caudill's prior testimony that he did not search inside the CI's crotch area before sending the CI to conduct the controlled buy.  Defendant also points to the absence of any testimony about whether Agent Caudill searched the CI or the CI's vehicle after the controlled buy.  From this testimony, Defendant attempts to draw the inference that Agent Caudill did not follow the proper procedures for searching the CI in conjunction with the controlled buy, and that Agent Caudill's search-warrant affidavit is therefore inaccurate when it asserts that he followed such procedures.

At the hearing on November 1, 2007, the parties elicited additional testimony from Agent Caudill which clarified that he did in fact search the CI before and after the controlled buy, and that the search included a "pat down" search of the exterior of the CI's clothed

---

[1]The retired police officer's affidavit merely cites the portions of the transcript of Agent Caudill's testimony mentioned above and then concludes that a failure to search the CI and the CI's vehicle would not accord with the standard procedures for conducting a controlled buy.  The fact that the PVDTF's controlled-buy procedure calls for a search of the CI and the CI's vehicle is already evident from Agent Caudill's own testimony, so the affidavit submitted with Defendant's motion papers adds nothing of significance to the analysis of this issue.

crotch area using the back of the agent's hand.  Agent Caudill's recent testimony further clarified why there was no effort to determine whether the currency used in the controlled buy was later found during the execution of the search warrant:  Agent Caudill could not make such a determination because he lost the piece of paper on which he had written the serial numbers for the currency he had given to the CI for use in the controlled buy.

While the Court is somewhat troubled by the agent's apparent negligence in losing this piece of paper, or not employing a more reliable method of recording the currency information, such negligence does not amount to a threshold showing of deliberate falsehood or reckless disregard for the truth.  Similarly, the fact that Agent Caudill did not mention every detail of his search of the CI in his search-warrant affidavit or in his prior testimony does not mean that he failed to perform that search or lied about it.  At best, such omissions show "negligence or innocent mistake" in failing to include more detail in the search-warrant affidavit or performing a more detailed search of the CI.  Artez, 389 F.3d at 1116.  That is not enough to trigger a Franks hearing or further discovery on this issue.

To invoke the exclusionary rule, a defendant must show a violation of the Fourth Amendment, not merely a violation of standard procedures required under state or local law. The Tenth Circuit emphasized this point in Artez, 389 F.3d at 1113, when it explained that controlled buys may corroborate an informant's tip even when they do not conform exactly to the procedure set forth in a "Criminal Investigation Handbook" and do not involve constant visual contact or audio recording.  Similarly, such corroboration is not precluded by the additional uncertainties involved when an "unwitting informant" or intermediary is

-15-

used to complete the controlled buy.  See id.  The risk that the CI "was lying or was in error . . . need not be wholly eliminated" in order to provide a substantial basis for determining the existence of probable cause to search a residence.  Id. at 1115.

In this regard, it is important to remember that the charges set forth in the *Second Superseding Indictment* do not depend on the Government's presentation of evidence concerning the controlled buy at trial.  In particular, these charges do not depend on whether the Government can show a link between the currency or controlled substance exchanged during the controlled buy and the items recovered from the Townsend Road residence during the execution of the search warrant.  At trial, the Government will not bear the burden of proving beyond a reasonable doubt that the controlled buy actually occurred and that it was Defendant who provided drugs to the CI on that occasion.[2]

Insofar as evidence of the controlled buy is not going to be introduced at Defendant's trial, its only purpose is to support the state district judge's finding of probable cause to issue the search warrant.  The probable-cause standard does "'not require the same type of specific evidence of each element of the offense as would be needed to support a conviction.'" United States v. Pollack, 895 F.2d 686, 691 (10th Cir. 1990) (quoting Adams v. Williams, 407 U.S. 143, 148-49 (1972)).  Indeed, "[t]he fact that the police did not, at the time of arrest,

---

[2]The Government previously stated that it is not going to call the CI to testify about the controlled buy at trial.  For this reason, Defendant withdrew his motion in limine [Doc. 36] to exclude any trial testimony about the CI's controlled buy.  [Doc. 57, 59.]  To the extent the parties require further clarification about what evidence will be admitted or excluded at trial, they may file motions in limine by the deadline stated in the *Order* [Doc. 108] granting Defendant's latest motion to continue the trial.

know exactly what crime had occurred is not relevant, so long as they had probable cause to believe '*an* offense' had been committed." United States v. Edwards, 242 F.3d 928, 935 (10th Cir. 2001) (quoting United States v. Maher, 919 F.2d 1482, 1485 (10th Cir. 1990)). And in this case, Agent Caudill's search-warrant affidavit included information about a potential gun crime as well as the information about the controlled buy of a controlled substance.

In determining whether probable cause existed to support the search warrant, the state court judge's task

> is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before h[er], including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

Artez, 389 F.3d at 1111 (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)).  A judge's decision to issue a warrant is entitled to "great deference" by a reviewing court.  Gates, 462 U.S. at 236.  Accordingly, a reviewing court "need only ask whether, under the totality of the circumstances presented in the affidavit, the [issuing] judge had a 'substantial basis' for determining that probable cause existed."  Artez, 389 F.3d at 1111 (quoting Gates, 462 U.S. at 238-39).

This "totality of the circumstances" test specifically applies to the determination of whether information from an anonymous, unwitting, or confidential informant can establish probable cause.  See id.  While the informant's "veracity, reliability, and basis of knowledge are all highly relevant" to such a determination, "a deficiency in one [factor] may be

compensated for, in determining the overall reliability of the tip, by a strong showing as to the other, or by some other indicia of reliability."  <u>Gates</u>, 462 U.S. at 233.  Thus, when an affidavit is sufficient on its face to establish probable cause, there is generally no need "to reveal the identities of the individuals providing information to the police;  hearsay from unknown or unnamed individuals has been recognized as acceptable support for a finding of probable cause."  <u>United States v. Mathis</u>, 357 F.3d 1200, 1205 (10th Cir. 2004).

Regardless of whether Agent Caudill could have performed a more detailed search of the CI or described that search in greater detail in his affidavit or prior testimony, the totality of the circumstances provided a substantial basis for the state district judge's determination that probable cause existed to support the issuance of the search warrant at issue in this case.  Accordingly, Defendant's most recent motion to suppress the fruits of that search warrant must be denied.

### C.   <u>Defendant's Oral Requests to Supplement His Motion to Suppress</u>

At the hearing on November 1, 2007, Defendant indicated to the Court that he wished to raise additional issues in conjunction with his motion to suppress that his current counsel, Mr. Harwood, had not argued or briefed.[3]  In particular, Defendant indicated that he wishes to challenge the search of the safes found within the Townsend Road residence on the grounds that these areas were not particularly described in Agent Caudill's search-warrant

---

[3]At a future date, the Court will separately address Defendant's request to proceed *pro se* in any subsequent proceedings or at trial.

documents.  According to Defendant, the agents' search of the safes required a separate, additional warrant.

This issue was previously raised and then abandoned by Defendant's former counsel, Mr. Granger.  Mr. Granger abandoned this issue for good reason, because the law does not support Defendant's assertion that an additional search warrant was required in order to open and search the safes found in the Townsend Road residence.  The Tenth Circuit has rejected the argument that a warrant authorizing the search of a house does not also authorize the search of a locked safe within the house.

The Circuit Court explained that

[a] lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search. Thus, a warrant that authorizes an officer to search a home for illegal weapons also provides authority to open closets, chests, drawers, and containers in which the weapon might be found . . . . [N]ice distinctions between closets, drawers, and containers . . . must give way to the interest in the prompt and efficient completion of the task at hand.

United States v. Pringle, 53 Fed.Appx. 65, 71 (10th Cir. 2002) (unpublished disposition *quoting* United States v. Ross, 456 U.S. 798, 820-21 (1982) (footnote omitted)).  The rule set forth in Pringle applies equally to all containers.  Pringle, 53 Fed.Appx. at 71.  Thus, where a locked safe is a likely repository for items specified in a warrant, law enforcement officers do not exceed the scope of the warrant in opening it.  See United States v. Snow, 919 F.2d 1458, 1461 (10th Cir. 1990) (where alleged criminal activity involved illegal real estate dealings, locked safe was likely place to find financial statement and keys bearing reasonable

relation to alleged real estate scheme and therefore could be opened without exceeding scope of search warrant).  The safes at issue in this case fall under this rule, because the controlled substances and other items described in the search-warrant documents were capable of being stored in them.

Defendant also indicated at the hearing on November 1, 2007, that he wished to challenge the search warrant in this case on the grounds that he was not properly served with the search-warrant documents in the manner set forth in Fed. R. Crim. P. 41.  Agent Caudill already credibly testified, however, that he did serve Defendant with the search-warrant documents when Defendant requested to see them during the execution of the warrant.  In addition, an extensive collection of search-warrant documents, including the inventory of items seized from the residence, is already of record in this case.  [Doc. 41-2.]

The Supreme Court has stated that "neither the Fourth Amendment nor Rule 41 of the Federal Rules of Criminal Procedure requires the executing officer to serve the warrant on the owner *before* commencing the search."  Groh v. Ramirez, 540 U.S. 551, 562 n.5 (2004) (emphasis added); accord United States v. Katoa, 379 F.3d 1203, 1205 (10th Cir. 2004).  Further, Fed. R. Crim. P. 41 is not implicated when the search warrant "was issued by a state court judge to a state officer," Katoa, 379 F.3d at 1206 n.2.

These statements are consistent with the Supreme Court's recent conclusion that  the executing agents' failure to knock and announce their presence before entering a residence does not provide grounds for invoking the exclusionary rule.  See Hudson v. Michigan, 126 S. Ct. 2159, 2165 (2006).  In addition, it has long been the rule that "officers executing a

-20-

search warrant for contraband have the authority 'to detain the occupants of the premises while a proper search is conducted.'"  Muehler v. Mena, 544 U.S. 93, 98 (2005) (quoting Michigan v. Summers, 452 U.S. 692, 705 (1981)).  When, as here, the warrant also authorizes a search for a firearm allegedly possessed by a convicted felon who is occupying the residence, the detention incident to the search may include the use of handcuffs.  See id. at 99-100.

In this case, the Court notes that the PVDTF agents initiated their execution of the search warrant by means of a "tactical entry" based on information recited in the search-warrant affidavit which suggested that Defendant was armed and dangerous.  Under the precedents cited above, the agents were justified in delaying service of the search warrant for the brief period necessary to accomplish their tactical entry and secure the residence's occupants.  It follows that the issues raised by Defendant in his oral requests at the hearing on November 1, 2007, do not provide grounds for invoking the exclusionary rule or granting any of the motions to suppress that have been filed in this case.

**D.**      **Defendant's Motions to Compel Discovery and In Camera Review**

In addition to his suppression motions, Defendant has filed a motion to compel discovery, or obtain *in camera* review by the Court, with regard to two categories of information:  (1) tape recordings of Defendant's telephone calls in September 2007, and (2) additional records pertaining to the CI's controlled buy.  Defendant's discovery motions are moot with respect to the tape recordings and the written procedure for conducting controlled

buys with confidential informants, because those items were produced on or before the date of the hearing on November 1, 2006.

The Court also notes that Defendant's counsel had the opportunity to question Agent Caudill regarding several of the items requested in Defendant's discovery motions. In particular, Agent Caudill testified that the controlled substance that he recovered from the CI was smaller than a pea. In light of this testimony, it is unnecessary to refer to evidence logs or police reports in order to determine the size or amount of the controlled substance used in the controlled buy.

The agent also testified that he lost the piece of paper on which he had recorded the serial numbers of the currency used in the controlled buy, and therefore he had no basis on which to make a comparison with the currency retrieved during the execution of the search warrant. For these reasons, the Government has no additional documentation regarding the currency that is responsive to Defendant's discovery motions at this time (recognizing, of course, that there remains a continuing duty to disclose it in the event that Agent Caudill recovers the missing piece of paper at some future date).

The remaining items requested in Defendant's discovery motions consist of (a) the gender of the CI, (b) the CI's criminal record, and (c) police reports of controlled buy, including evidence logs. Discovery concerning these items carries a risk of disclosing further details about the controlled buy which may reveal the CI's identity. Therefore, these portions of the Defendant's discovery requests implicate the Government's "privilege to withhold from disclosure the identity of persons who furnish law enforcement officers with

information on criminal acts." United States v. Brantley, 986 F.2d 379, 383 (10th Cir. 1993)

(quoting Roviaro v. United States, 353 U.S. 53, 59 (1957)).

This privilege must give way where the requested information "is relevant and helpful

to the defense of an accused, or is essential to a fair determination of a cause." Roviaro, 353

U.S. at 60-61.  But "[m]ere speculation about the usefulness of an informant's testimony is

not sufficient to warrant disclosure." Mathis, 357 F.3d at 1208.  For example, the Tenth

Circuit has consistently ruled that disclosure is not required "where the information sought

'would be merely cumulative,' or where the informer did not participate in the illegal

transaction," or where "the informant was not a participant or witness to the crime" at issue.

Brantley, 986 F.2d at 383 (quoting United States v. Scafe, 822 F.2d 928, 933 (10th Cir.

1987)).

In this case, the CI is not a witness to, or participant in, the specific crimes charged

in the *Second Superseding Indictment*, all of which depend on evidence discovered by police

*after* the controlled buy referenced in Agent Caudill's search-warrant affidavit.

Consequently, there is no need to refer to the controlled buy at trial, and the Government has

stated that it does not intend to call the CI as a witness at trial.  Under these circumstances,

Defendant has not shown how the disclosure of further details about the CI or the controlled

buy would be relevant and helpful to his defense at trial.

That said, the Court also must explore the possibility that the discovery requests at

issue here could be relevant and helpful to the defenses raised in Defendant's motions to

suppress.  In this regard, the CI was certainly a witness to, or participant in, the controlled

buy referenced in the search-warrant affidavit.  But again, the probable cause determination for the search warrant does not depend on whether the currency used in the controlled buy was later found in the residence at the time of the search warrant's execution, or whether the substance retrieved from the controlled buy was properly logged into the evidence vault, or whether the CI has a criminal record, or whether the agent could not search the CI more thoroughly because of his or her gender.  See United States v. Green, 178 F.3d 1099, 1108 (10th Cir. 1999).

In particular, the Court already has concluded that the probable-cause determination for the search warrant does not depend on whether Agent Caudill searched inside the CI's body cavities or other features unique to the female anatomy.  Agent Caudill testified that he did not search body cavities other than the mouth, and he also clarified that his pat-down search procedures are substantially the same for both male and female informants. Therefore, there is no foreseeable need to disclose whether the CI was male or female.

The probable-cause determination also does not depend on whether the CI has a criminal record.  The CI's credibility is not central to the probable-cause determination in this instance, because Agent Caudill's search-warrant affidavit provides "other indicia of reliability," Gates, 462 U.S. at 233, which make it unnecessary "to reveal the identities of the individuals providing information to the police" at the suppression hearing. Mathis, 357 F.3d at 1205.

Finally, Defendant's counsel had ample opportunity on two occasions to question Agent Caudill about the controlled buy in order to make a threshold showing of deliberate

falsehood or reckless disregard for the truth under the framework set forth in <u>Franks</u>, 438 U.S. at 171-72.  Having previously determined that Defendant has failed to make such a threshold showing, I also conclude that he is not entitled to further discovery on this issue and that such discovery would be "merely cumulative."  <u>Scafe</u>, 822 F.2d at 933; <u>see, e.g.</u>, <u>United States v. Pelley</u>, 572 F.2d 264, 266 (10th Cir. 1978) (concluding that disclosure was not required in the context of a suppression hearing where defense counsel had the opportunity cross-examine a detective "at length and in detail" about the information supplied by a confidential informant).  Defendant's discovery motions are, therefore, denied.

###    E.    The Government's Motion in Limine

On August 14, 2007, the Government filed a motion in limine seeking the admission of evidence under Fed. R. Evid. 404(b) concerning the execution of a search warrant for a residence located at 2514 W. Church Street in Carlsbad, New Mexico, on February 6, 2006. According to the proffer contained in the Government's motion papers, the February 6 search warrant resulted in the seizure of "several items of drug paraphernalia, plastic bags containing suspected crack cocaine and methamphetamine, and a Marlboro pack containing a bindle bag with suspected methamphetamine" found in the Church Street residence.  The Government's motion papers further allege that Defendant "possessed crack cocaine and methamphetamine" on February 6, 2006.

These factual allegations do not provide a sufficient basis for admitting evidence of Defendant's prior acts under Fed. R. Evid. 404(b) and the four-part test articulated by the

Supreme Court in  <u>Huddleston v. United States</u>, 485 U.S. 681, 691-92 (1988).  This test

requires that:

> (1) the evidence must be offered for a proper purpose;  (2) the evidence must
> be relevant;  (3) the trial court must make a Rule 403 determination of whether
> the probative value of the similar acts is substantially outweighed by its
> potential for unfair prejudice;  and (4) pursuant to Fed. R. Evid. 105, the trial
> court shall, upon request, instruct the jury that evidence of similar acts is to be
> considered only for the proper purpose for which it was admitted.

<u>United States v. Zamora</u>, 222 F.3d 756, 762 (10th Cir. 2000) (quoting <u>United States v.</u>

<u>Roberts</u>, 185 F.3d 1125, 1141 (10th Cir.1999)).

     In this context, proper purposes for admitting evidence of prior acts under Fed. R.

Evid. 404(b) include showing that a defendant had knowledge of controlled substances, that

he intended to distribute them, or that his possession of them was not the result of absence

of mistake or accident.  <u>See</u> <u>United States v. Johnson</u>, 42 F.3d 1312, 1315 (10th Cir. 1994).

But in this case, the Government has not shown how the minimal facts alleged in the

Government's motion papers are *relevant* to these purposes.  Certainly, the fact that

Defendant was associated with a different address approximately six months earlier does

nothing to show that he resided at the Townsend Road address on the date of the crimes

charged in the *Second Superseding Indictment*.

     In addition, the Government's proffer fails to specify (1) whether the contraband

found at the Church Street address on February 6, 2006, was found on, or in close proximity

to, Defendant's person, (2) whether the paraphernalia and suspected controlled substances

found at that time and location were indicative of personal-use amounts versus distributable

amounts, or even (3) whether such "suspected" controlled substances were ever tested to determine whether they actually contained methamphetamine or cocaine. Thus, it is unclear whether Defendant actually resided at the Church Street address on February 6, 2006, whether the suspected contraband found there has any nexus to him, and whether that suspected contraband is indicative of personal drug use versus distribution to others.

There is a grave danger of unfair prejudice or confusion of the issues if evidence on this topic were presented to the jury in the midst of a trial on charges arising from a separate incident occurring several months later at a different address. Without more detailed evidence to show that the suspected contraband found at the Church Street address was meant for distribution rather than personal use, the Government's attempt to associate Defendant with this contraband runs the risk of portraying him as a mere drug addict. Similarly, the failure to specify a clear nexus between Defendant and the contraband found at the Church Street residence creates a risk of implying that he is guilty by virtue of his association with whoever else resided or used drugs at that location.

Finally, the whole topic of Defendant's past activities leading up to the execution of the search warrant at the Townsend Road residence on August 31, 2006, runs the risk of opening the door to questioning at trial regarding the controlled buy supervised by Agent Caudill and the identity of the confidential informant (CI) used in that controlled buy. As noted in the discussion of Defendant's motions, the Government has previously indicated that it does not wish to raise the latter topics at trial and thereby waive its privilege to withhold information regarding the CI's identity.

For these reasons, the Court determines that the minimal probative value of the evidence identified in the Government's motion papers is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or other considerations under Fed. R. Evid. 403.   Therefore, the Government's motion in limine seeking the introduction of evidence under Fed. R. Evid. 404(b) is denied at this time.

Counsel are reminded, however, that the Court's pretrial rulings on motions in limine are subject to reconsideration in the event that unforeseen circumstances or a change in context should arise during the trial.  In the event that they wish to seek such reconsideration, counsel are directed to alert the Court outside the jury's presence before making any attempt to introduce evidence on this topic.

## III.   <u>CONCLUSION</u>

For the foregoing reasons, Defendant's motions, as supplemented by his oral requests at the hearing on November 1, 2006, are denied, and the Government's motion in limine is denied as well.

**IT IS, THEREFORE, ORDERED** that Defendant's *Motion to Suppress Statements* [Doc. 90] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's *Motion to Compel Discovery* [Doc. 91] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's *Motion for In Camera Review* [Doc. 92] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's *Motion to Suppress Physical Evidence* [Doc. 93] is **DENIED**.

**IT IS FURTHER ORDERED** that the *Government's Motion in Limine* [Doc. 70] is **DENIED**.

**SO ORDERED** this 13th day of December, 2007, in Albuquerque, New Mexico.

**M. CHRISTINA ARMIJO**
United States District Judge