IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

   Plaintiff,

vs.             No. CR 06-2605 MCA

RICKY BARKSDALE GREEN,

   Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant Ricky Barksdale Green's *Fourth Motion to Suppress Evidence Including All Evidence Whether Physical or Statements Obtained as a Result of the Illegal Search Warrant* [Doc. 127] filed on January 25, 2008. The Court held hearings on the above motion in Albuquerque, New Mexico, on February 27, 2008, and March 6, 2008. Having considered the parties' submissions, the applicable law, the evidence and arguments presented at the hearings, and being fully advised in the premises, the Court denies the Defendant's motion based upon the findings of fact and conclusions of law set forth below.

## I. FINDINGS OF FACT

1. On August 31, 2006, Agent Carroll Caudill and other agents of the Pecos Valley Drug Task Force ("the PVDTF") executed a search warrant at a residence occupied by Defendant Ricky Green, described as a pinkish-cream, single-wide mobile home with tan trim, which

is located at the south end of Townsend Road, on the west side of Townsend Road, in Carlsbad, Eddy County, New Mexico.

2.      The agents obtained the warrant as a result of an affidavit that Agent Caudill, a sergeant with the Eddy County Sheriff's Office, prepared and presented to State District Court Judge Jane Shuler Gray on August 30, 2006.

3.      The search warrant and affidavit are in the standardized form prescribed by the New Mexico Supreme Court for use in state court proceedings pursuant to Forms 9-213 and 9-214 and Rule 5-211NMRA 2008; Agent Caudill acted in good faith in relying on these standardized forms.

4.      Pursuant to the above rules, the form of search warrant used in this case includes a section entitled "return and inventory" which is filled out and filed with the issuing court after the warrant is executed.  See Form 9-214 NMRA 2008.

5.      Pursuant to the above rules, the form of search warrant used in this case explicitly references, incorporates, and attaches the supporting affidavit, which appears on separate sheets of paper.

6.      The supporting affidavit used in this case in turn references, attaches, and includes separate pages containing descriptions of the premises or person to be searched (Attachments A and D), the items to be seized (Attachment B), and the grounds for establishing probable cause (Attachment C).

7.      The affidavit and its attachments identify with particularity the items to be seized in the search (including firearms and any and all controlled substances, including but not

-2-

limited to, crack cocaine and methamphetamine) as well as the place to be searched (a single-wide, pinkish cream with tan trim mobile home, located at the south end of Townsend Road, on the west side of the road, Carlsbad, Eddy County, New Mexico, and Ricky Barksdale Green).

8.      Because the state court's procedure calls for multiple copies of the search warrant and affidavit to be prepared and distributed, it was impractical to staple the search warrant to the affidavit, and Agent Caudill did not do so.

9.      Instead, Agent Caudill kept the original form of search warrant, affidavit, and all supporting attachments together with a paper clip when he presented them to Judge Gray; then, after Judge Gray reviewed these documents and signed the search warrant, Agent Caudill took the paper-clipped originals to the Court Clerk's office for filing and copying.

10.     Upon receiving the signed originals from Agent Caudill, the Court Clerk made two copies of the packet of documents consisting of the signed search warrant, affidavit, and supporting attachments.

11.     One copy of this packet of documents was provided to Agent Caudill so that he could return them to the Court for filing once he had executed the search warrant and completed the "return and inventory" section of the warrant form; the other packet of documents was intended to be served on the Defendant and/or left at the residence.

12.     As previously noted in the Court's *Memorandum Opinion and Order* [Doc. 112] filed on December 13, 2007, Agent Caudill promptly served Defendant with a copy of the complete packet of search warrant documents (including the warrant itself, the supporting

affidavit, and its attachments) within a few minutes after the agents executing the warrant had secured the residence, ensured that it was safe to move the Defendant to the living room sofa, and advised Defendant of his rights under <u>Miranda v. Arizona</u>, 384 U.S. 436 (1996).

13.     More specifically, Agent Caudill went to his vehicle within a few minutes after securing the residence, retrieved a complete packet of the search warrant documents (including the warrant itself, the supporting affidavit, and its attachments) that was held together by a paper clip, and provided that complete packet of documents to Defendant so that Defendant had notice and an opportunity to read them.

14.     After affording Defendant with notice and an opportunity to read the complete packet of search warrant documents (including the warrant itself, the supporting affidavit, and its attachments), Agent Caudill retrieved the search warrant from Defendant in order to complete the "return and inventory" section of the warrant form by listing the items seized during the execution of the warrant.

15.      Defendant retained the supporting affidavit and its attachments, but was transported to the Eddy County Detention Facility by Officer Ernest Chavez of the Eddy County Sheriff's Department before the agents completed their search of the residence and filled out the "return and inventory" section of the warrant form; for this reason, the copy of the search warrant served on the Defendant became separated from Defendant's copy of the affidavit and its attachments at the time Defendant was transported to the detention facility.

16.     After Defendant had been transported to the detention facility, Agent Caudill completed the task of filling out two copies of the "return and inventory" section of the

warrant form; he then left one copy of the warrant (with the completed "return and inventory" section) at the residence and filed the other copy (also with a completed "return and inventory" form) with the Court Clerk.

17.     Although the search warrant and affidavit were contained on separate pages that are not stapled to one another, all portions of the search warrant and affidavit were kept physically together as a unitary and contiguous sequence of papers when these documents were presented to Judge Gray, when Judge Gray signed and approved them, and when Agent Caudill first served the search warrant on Defendant at his residence during the execution of the warrant.

## II.     LEGAL ANALYSIS AND CONCLUSIONS OF LAW

The Court has previously ruled on the constitutionality of different aspects of the search and seizure at issue in this case in a *Memorandum Opinion and Order* [Doc. 51] filed on July 16, 2007, and in a *Memorandum Opinion and Order* [Doc. 112] filed on December 13, 2007.  After these rulings were issued, Defendant was appointed new counsel and filed a fourth motion to suppress the evidence seized from the Townsend Road residence in Carlsbad, New Mexico on or about August 31, 2006.  Defendant's most recent motion questions whether the search warrant executed on that date meets the Fourth Amendment's particularity requirements and, more specifically, whether the lack of particularity in the search warrant itself is cured by Agent Caudill's supporting affidavit.

The Supreme Court recently addressed the Fourth Amendment's particularity requirement in <u>Groh v. Ramirez</u>, 540 U.S. 551 (2004).  While the facts in <u>Groh</u> did not

involve the use of an affidavit to support the particularity of a search warrant, the Court nevertheless observed that:  "most Courts of Appeals have held that a court may construe a warrant with reference to a supporting application or affidavit if the warrant uses appropriate words of incorporation, and if the supporting document accompanies the warrant."  Id. at 557-58.  In support of this observation, Groh cited several decisions by the Courts of Appeal, including the Tenth Circuit's opinion in United States v. Williamson, 1 F.3d 1134, 1136 n.1 (10th Cir. 1993).  A more recent Tenth Circuit opinion also cites Williamson for the proposition that an "affidavit for [a] warrant can be considered in assessing [the] particularity of [the] warrant when incorporated by reference and attached to [the] warrant."  United States v. Brakeman, 475 F.3d 1206, 1209 (10th Cir. 2006).

The standardized form of search warrant used in this case complies with the incorporation requirement because "[b]oilerplate language on New Mexico's official search-warrant form states that a copy of the affidavit is attached to the warrant and authorizes a search of the place described in the affidavit."  Id. (citing Form 9-214 NMRA 2008).  The affidavit in this case also incorporates attachments which describe with particularity the property or person to be searched and the items to be seized.

The remaining question is whether the search warrant "attaches" or "accompanies" the supporting affidavit.  Courts have come to varying conclusions as to what it means for a search warrant to "attach" or "accompany" a supporting affidavit.

An early Tenth Circuit opinion concluded that "we shall not require that the facts stated in the affidavit be recited again on the face of the warrant when they are *served*

*together*." United States v. Rael, 467 F.2d 333, 335 (10th Cir. 1972) (emphasis added).  A later series of Tenth Circuit opinions cited or quoted a passage from the 1987 edition of Professor Wayne R. LaFave's treatise on the Fourth Amendment which refers to a requirement that "the affidavit and search warrant must be *physically connected so that they constitute one document*."  Williamson, 1 F.3d at 136 n.1 (emphasis added; citation and internal quotation marks omitted); accord United States v. Dahlman, 13 F.3d 1391, 1395 (10th Cir. 1993); United States v. Leary, 846 F.2d 592, 603 (10th Cir. 1988).

The most recent edition of Professor LaFave's treatise, however, notes the absence of "universal agreement" as to this requirement and appears to take the position that Groh has adopted a somewhat different approach, which only requires an incorporated affidavit to "accompany" the search warrant.   See 2 Wayne R. LaFave, Search and Seizure:   A Treatise on the Fourth Amendment § 4.6(a), at 613-17 (4th ed. 2004).  The LaFave treatise also contains a discussion of developments in the Ninth Circuit, where the issue has been analyzed more thoroughly.  See id.

Surveying the available authorities in 1993, a panel of the Ninth Circuit observed that "never, so far as we can tell, has an affidavit or other document incorporated by reference into a search warrant been disregarded by a reviewing court because, although it did accompany the warrant, it was not physically attached to it." United States v. Towne, 997 F.2d 537, 547 n.5 (9th Cir. 1993); accord 2 Wayne R. LaFave, supra, § 4.6(a), at 614.  And even if the word "attachment" is construed as requiring some form of physical connection between the warrant and affidavit, neither the text of the Fourth Amendment nor any of the

reported case law specifies that such a physical connection must be accomplished by means of a specific technology (such as staples or paper clips).  In this regard, the Ninth Circuit has opined that:  "We simply do not believe that the Constitution requires us to draw the line between lawful and unlawful searches according to the presence or absence of a staple, a paper clip, a bit of tape, or a rubber band."  Towne, 997 F.2d at 548; accord United States v. Vesikuru, 314 F.3d 1116, 1121 n.4 (9th Cir. 2002).

In declining to impose a specific requirement that the affidavit be stapled, clipped, taped, or banded together with the search warrant, courts appear to recognize that affidavits in support of search warrants "are normally drafted by nonlawyers in the midst and haste of a criminal investigation," United States v. Ventresca, 380 U.S. 102, 108 (1965), and therefore should "be tested and interpreted in a common sense and realistic, rather than a hypertechnical, manner," United States v. Turner, 770 F.2d 1508, 1510 (9th Cir.1985).  See United States v. Lingenfelter, 997 F.2d 632, 639 (9th Cir. 1993).  The essential question is whether the affidavit and search warrant meet the underlying purposes of the Fourth Amendment's particularity requirement.

In this regard, "[t]he rule requiring affidavits to accompany warrants lacking particularity serves not one, but two aims: 'The purpose of the accompanying affidavit clarifying a warrant is both to limit the officer's discretion and to inform the person subject to the search what items the officers executing the warrant can seize.'"  United States v. McGrew, 122 F.3d 847, 850 (9th Cir. 1997) (quoting United States v. Hayes, 794 F.2d 1348, 1355 (9th Cir.1986)).  In the context presented here, these purposes are served so long as the

search warrant and incorporated affidavit are close enough in physical proximity to cause a reasonable reader to recognize them as a unitary sequence of papers.

Based on the findings of fact set forth above, I determine that the search warrant and affidavit at issue in this case satisfied the purposes of the Fourth Amendment's particularity requirement because the search warrant explicitly references, incorporates, and attaches the supporting affidavit as a unitary and contiguous sequence of papers that were kept together when they were presented to Judge Gray, when Judge Gray signed and approved them, and when they were first served on the Defendant.  The fact that Agent Caudill later retrieved the search warrant from Defendant in order to fill out the "return and inventory" section does not change this conclusion, because by that time Defendant already had been afforded notice and an opportunity to read both the warrant and the affidavit.  It follows that any lack of particularity in the search warrant itself is cured by the attached and incorporated affidavit, and Defendant's fourth motion to suppress provides no basis for invoking the exclusionary rule as to any evidence or statements.

## III.   <u>CONCLUSION</u>

For the foregoing reasons, the Court denies Defendant's fourth motion to suppress the evidence and statements at issue in this case.

**IT IS, THEREFORE, ORDERED** that Defendant's *Fourth Motion to Suppress Evidence Including All Evidence Whether Physical or Statements Obtained as a Result of the Illegal Search Warrant* [Doc. 127] is **DENIED**.

**SO ORDERED** this 14th day of March, 2008, in Albuquerque, New Mexico.

**M. CHRISTINA ARMIJO**
United States District Judge