# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                                                                          No. CR  06-2605 JB

RICKY BARKSDALE GREEN,

       Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the United States Probation Office's ("USPO") Third Amended Petition for Revocation of Supervised Release, filed October 20, 2021 (Doc. 320)("Revocation Petition").  The Court held an evidentiary revocation hearing on October 27, 2021 and November 30, 2021.  See Clerk's Minutes, filed October 27, 2021 (Doc. 327); Clerk's Minutes, filed November 30, 2021 (Doc. 336).  The primary issue is whether the Court should revoke Defendant Ricky Barksdale Green's supervised release, because he violated a condition of his supervised release by committing a federal, state, or local crime when he assaulted his girlfriend, Dana Havink.  The Court concludes by a preponderance of the evidence that Green assaulted and strangled Havink, in violation of New Mexico law for Aggravated Battery Against a Household Member, N.M.S.A. § 30-3-16.  Consequently, the Court will revoke Green's supervised release.

## PROCEDURAL BACKGROUND

On March 28, 2008, a jury found Green guilty of: (i) possession with intent to distribute 5 grams or more of cocaine base; (ii) possession with intent to distribute less than 500 grams of cocaine; (iii) possession with intent to distribute 5 grams or more of methamphetamine; (iv) possession of a firearm in furtherance of a drug trafficking crime; and (v) being a felon in

possession of a firearm or ammunition.  See Jury Verdict at 1-2, filed March 28, 2008 (Doc. 181).

The Honorable M. Christina Armijo, United States District Judge for the United States District

Court for the District of New Mexico, sentenced Green to 180 months' imprisonment in the Bureau

of Prisons' ("BOP") custody.  See Amended Judgment at 3, filed October 1, 2008 (Doc. 218).  Judge

Armijo also sentenced Green to eight years' supervised release.  See Amended Judgment at 4.

Green's mandatory supervised release conditions state: "The defendant shall not commit another

federal, state, or local crime."  Amended Judgment at 4.  Green's mandatory supervised release

conditions also state: "The defendant shall refrain from any unlawful use of a controlled substance."

Amended Judgment at 4.  Green was released from BOP custody on January 8, 2020, and began

his supervised release term at that time.  See Revocation Petition at 1.

## FINDINGS OF FACT

The Court held an evidentiary revocation hearing.  See October 27, 2021, Clerk's Minutes

at 1; November 30, 2021, Clerk's Minutes at 1.  The Court makes the following findings of fact

related to Green's violations of the supervised release conditions.  Rule 12(d) of the Federal Rules

of Criminal Procedure requires the Court to state its essential findings on the record when deciding

a motion that involves factual issues.  See Fed. R. Crim. P. 12(d) ("When factual issues are involved

in deciding a motion, the court must state its essential findings on the record.").  The findings of

fact in this Memorandum Opinion and Order shall serve as the Court's essential findings for rule

12(d) purposes.

   1.    **Aggravated Battery Violation**.

   1.    In August 2020, Havink and Green were in an intimate relationship.  See Tr. at

207:20-22 ("Q. So just to clear up things, you and Dana were in an intimate relationship; correct?

A. Sex, yes, ma'am.")(Camacho, Green).

2.      On August 14, 2020, Havink was trying to remove items from her yard and cover items with a tarp before a rainstorm.  See Tr. at 72:22-24 (Hacker); id. at 177:8-12 (Green).

3.       While Havink was working in the yard, Havink and Green began to argue.  See Tr. at 72:22-73:3 (Hacker).

4.      Green grabbed Havink by the back of her neck, forced her inside her home, and strangled her, causing her to blackout.  See Tr. at 73:3-9 (Hacker).[1]

---

[1]Green purports to dispute this fact.  See Tr. at 178:1-17 (Green).  Green contends that he did not cause Havink to blackout and be unaware of exactly how she got the injury to her left eye.  See Tr. at 178:1-17 (Green).  Green contends that a tarp hit Havink in the face while she was covering items in the yard.  See Tr. at 178:1-17 (Green).  Green testified:

> I got out of the truck and I started on the third pallet, wrestling with the tarp.  Because it was so windy, it was hard to get a grasp on it.
>
> . . . .
>
>      And I finally got ahold of it.  And I glanced over to where she's at and I don't see her.  I just see the tarp just flapping, so I make a circle with the rope that's on the tarp and I come around it and when I get around it I see Dana on the ground.  I put one tie into the string.  And I go to Dana, "Are you all right?"  And she pops up and starts again messing with the tarps.  I go back to the one that I was working on and I secure it.  And then we meet in the middle of the one that's in the middle pallet and we both secure it together.  We then turn and walk towards the house, the one-room shack.  When we entered the one-bedroom shack she turns around.  And I said, ["]Dang, what happened to you?["]  She goes, "What, what?"  I said, "Your eye," you know.  And at that time she had dry blood on her eye, and she had this real black mark right here.

Tr. at 177:15-18, 178:1-17 (Green).  The Court does not, however, find Green credible.  At several points in the hearing, the Court witnessed Green testify to statements and actions that contradict video evidence.  For example, Green testified:

> Q.   And I'll rephrase my question slightly because I apologize, Officer Hacker asked her he was the one who did this to you and she nods yes, did you see that on the video?

5.      While Havink was blacked out from the strangulation, Green caused the injury to

Havink's left eye.  See Tr. at 72:22-73:9 (Hacker).[2]

---

A.  No, ma'am.  I didn't hear Officer Hacker ask her.  I couldn't understand what he was asking her, but I did see her like her head kind of like nodded or something.

Tr. at 220:8-15 (Camacho, Green), while Hacker's body camera footage clearly displayed Hacker asking Havink, "Is he he the one who did this to you?" and Havink nodding, Government's Exhibit 6 at 3:28, admitted October 27, 2021 (dated August 15, 2020), filed November 8, 2021 (Doc. 328)("Hacker Body Camera Footage").  Additionally, Green testified that, at a traffic stop on August 15, 2020, Officer Herrera talked to Green before Herrera spoke to Havink, but Green stated that Herrera did not record it.  See Tr. at 246:15-249:1 (Green).  Herrera's body camera footage displays, however, Herrera getting out of his patrol car and speaking to Havink, and the footage is continuous from the time Herrera exits his car and speaks with Havink.  See Government's Exhibit 5 (dated August 15, 2020), filed November 8, 2021 (Doc. 328).  If Green is willing to testify untruthfully under oath about small things, he is also willing to make self-serving statements about the elements of the offense.  The Court does not believe Green's version of events.  Consequently, having considered all the evidence, the Court does not find Green credible and, therefore, disagrees with Green's version of events.

[2]Green purports to dispute this fact.  See Tr. at 180:21-181:2 (Green).  In part, Green relies on an affidavit by his niece, Demetria Richardson, in which Richardson states that Havink referred to the injury to her left eye and told Richardson that Green "didn't do it."  Affidavit of Demetria Richardson at 1-2, (dated November 2, 2021), filed November 12, 2021 (Doc. 329-1)("Richardson Aff.").  Havink later told Hacker, however, that Green strangled her to the point of unconsciousness and that she woke up with the left eye injury.  See Tr. at 72:22-73:9 (Hacker).  Domestic violence victims often lie about who caused their injuries due to fear of retaliation from their abusive partners.  See, e.g., Njeri Mathis Rutledge, Perjury in Domestic Violence Cases, 39 N.M. L. Rev. 173 (2009)(explaining that victims may provide false accounts of violence committed against them because they fear for their own safety).  Here, once Havink was alone with Hacker, she told him that Green caused her injuries, but that she was afraid of his retaliation.  See Tr. at 69:9-13 (Hacker).  Green contends, however,

[t]hat the tarp had popped Dana in the eye, in her left eye.  She lost her balance.  She then fell forward hitting her face on the -- the pallet contained a table, a dining table and some wooden dining table and some wooden chairs.  She hit her face on either the dining table or the leg of one of those chairs, and possibly the pallet itself.

Tr. at 180:21-181:2 (Green).  As noted in footnote 1, supra, the Court does not find Green's testimony credible and, therefore, the Court does not believe Green's testimony that a fall caused the bruising to Havink's left eye.  Moreover, the Court has considered Government's Exhibit 1,

6.     On the evening of August 15, 2020, a male called the Hobbs Police Department and informed officers that he received a text from Havink containing a picture of her face "beaten up." Tr. at 47:10-21 (Hacker).

7.     Officer Dalton Hacker and Officer Jennifer Scheller went to Havink's home late in the evening on August 15, 2020.  See Tr. 53:15-54:3 (Hacker).

8.     Havink's home was an "improved shed" with insulation, a bed, and electricity, but no bathroom.  Tr. 55:14-21 (Hacker).

9.     When the Officers arrived, Havink's face was swollen and bruised.  See Tr. at 57:23-58:3 (Hacker).

10.    Havink had light bruising on the upper portion of her neck.  See Tr. at 78:7-11.

11.    While standing in the doorway of Havink's home, Hacker asked Havink what happened to her face, and Havink told Hacker that she had fallen and hit her face on something. See Tr. at 59:18-20 (Hacker).

12.    Hacker described Havink as "skittish," constantly checking over her shoulder and "stuttering when talking."  Tr. at 60:7-15 (Hacker).

13.    Havink is roughly five feet, five inches tall and 130 pounds.  See Tr. at 72:3-6 (Camacho, Hacker).

---

admitted October 27, 2021, filed November 8, 2021 (Doc. 328)("Ex. 1"), Government's Exhibit 2, admitted October 27, 2021, filed November 8, 2021 (Doc. 328)("Ex. 2"), and Government's Exhibit 3, admitted October 27, 2021, filed November 8, 2021 (Doc. 328)("Ex. 3"), which are three photographs depicting Havink's facial injury.  See Ex. 1; Ex. 2; Ex. 3.  The Court concludes that Havink's bruising is not likely to have been caused by her falling and hitting her head on a table, as Green contends.  See Tr. at 180:21-181:2 (Green).  Instead, the Court believes Havink's statement to Hacker that Green caused her facial injuries when he strangled her and caused her to blackout, because Havink's story is consistent with her injuries, and Hacker's demeanor and testimony were credible.

14.     Green was sitting on the bed in Havink's home.  See Tr. at 61:13-14 (Hacker).

15.     Green is about six feet, two inches tall.  See Tr. at 71:11-16 (Camacho, Hacker).

16.     Hacker asked Havink to step outside and talk, and she complied.  See Tr. at 63:15-20 (Hacker).

17.     Green came outside and told Havink not to speak to the Officers.  See Tr. at 65:17-21 (Hacker).

18.     Hacker called an ambulance to the scene.  See Tr. at 66:9-13 (Hacker).

19.     Havink agreed to receive medical treatment.  See Tr. at 66:14-16 (Camacho, Hacker).

20.     Hacker entered the ambulance with Havink.  See Tr. at 66:18-24 (Hacker).

21.     In the ambulance, Havink told Hacker that her boyfriend, Green, caused injuries to her face.  See Tr. at 69:3-7 (Hacker).

22.     Havink also stated that she had been strangled and that she was afraid to speak to officers for fear of retaliation.  See Tr. at 69:9-13 (Hacker).

23.     Officers arrested Green early in the morning of August 16, 2020, for aggravated battery against a household member.  See Tr. at 69:18-19 (Hacker).

24.     Once Green was arrested and restrained inside a police vehicle, Havink told police that Green had strangled her, and that she had passed out and awoken with her eye injuries.  See Tr. at 72:22-73:9 (Hacker).

25.     Havink also informed the Officers that Green would not let her leave the structure she was living in.  See Tr. at 75:17-76:10 (Camacho, Hacker).

26.     On August 17, 2020, Green was arrested for violating his supervised release by committing the crime of Aggravated Battery on a Household Member, Interfering with

Communications, and False Imprisonment.  <u>See</u> Arrest Warrant Returned Executed, filed August 19, 2020 (Doc. 281).

      **2.**    **<u>Controlled Substances Violation</u>.**

27.    On September 1, 2020, the Honorable Kevin R. Sweazea, United States Magistrate Judge for the United States District Court for the District of New Mexico, held a Detention Hearing on Green's arrest.  <u>See</u> Clerk's Minutes, filed September 1, 2020 (Doc. 288)("September 1, 2020, Clerk's Minutes").

28.    Magistrate Judge Sweazea released Green on his previously imposed supervised release conditions, with additional conditions of, in relevant part, no contact with the alleged victim and electronic monitoring under curfew 7:00 p.m. through 7:00 a.m.  <u>See</u> September 1, 2020, Clerk's Minutes at 1.

29.    On April 15, 2021, and April 21, 2021, Green submitted urine samples for drug testing.  <u>See</u> Violation Report at 1.

30.    Both drug tests returned positive results for cannabinoids, again, in violation of Green's supervised release conditions.  <u>See</u> Violation Report at 1.

31.    The substance abuse violations make revocation of supervised release mandatory. <u>See</u> Tr. at 5:2-5 (Court, Probation).

32.    Green pled guilty to using substances on April 15, 2021, and April 21, 2021, in violation of his second mandatory condition of supervised release.  <u>See</u> Tr. at 8:12-18 (Tallon); Tr. at 13:11-16 (Green).

<h3 style="text-align:center"><u>CONCLUSIONS OF LAW</u></h3>

1.    The Court now will state its conclusions of law ("COLs"). The Court will begin by stating the applicable law.  It will then set out the law regarding issues relevant to its analysis.

Last, the Court will present that analysis.

## **RELEVANT LAW REGARDING THE GUIDELINES**

2.      In <u>United States v. Booker</u>, the Supreme Court of the United States severed the mandatory provisions from the Sentencing Reform Act, Pub. L. No. 98-473, 98 Stat. 1976, thus making the Guidelines sentencing ranges effectively advisory.  In excising the two sections, the Supreme Court left the remainder of the Sentencing Reform Act intact, including 18 U.S.C. § 3553: "Section 3553(a) remains in effect, and sets forth numerous factors that guide sentencing. Those factors in turn will guide appellate courts, as they have in the past, in determining whether a sentence is unreasonable."  <u>United States v. Booker</u>, 543 U.S. at 261.

3.      Congress has directed sentencing courts to impose a sentence "sufficient, but not greater than necessary," to comply with the four statutorily defined purposes that 18 U.S.C. § 3553(a)(2) enumerates:

> (A)      to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B)      to afford adequate deterrence to criminal conduct;
>
> (C)      to protect the public from further crimes of the defendant; and
>
> (D)      to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . .

18 U.S.C. § 3553(a)(2)(A)-(D).

> [A] defendant who has been found guilty of an offense described in any Federal statute . . . shall be sentenced in accordance with the provisions of this chapter so as to achieve the purposes set forth in subparagraphs (A) through (D) of section 3553(a)(2) to the extent that they are applicable in light of all the circumstances of the case.

18 U.S.C. § 3551(a).  To achieve these purposes, § 3553(a) directs sentencing courts to consider:

(i) United States Sentencing Guidelines Manual (U.S. Sentencing Comm'n 2018)("U.S.S.G." or

"Guidelines"); (ii) the nature of the offense and of the defendant's character; (iii) the available sentences; (iv) the policy favoring uniformity in sentences for defendants who commit similar crimes; (v) the need to provide restitution to victims; and (vi) any pertinent United States Sentencing Commission policy statements in effect on the date of sentencing.  See 18 U.S.C. § 3553(a)(1), (3)-(7).

4.     Although the Guidelines are no longer mandatory, both the Supreme Court and the United States Court of Appeals for the Tenth Circuit have clarified that, while the Guidelines are one of several factors which § 3553(a) enumerates, they are entitled to careful consideration.  See Rita v. United States, 551 U.S. 338, 349 (2007)("The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate."); United States v. Cage, 451 F.3d 585, 593 (10th Cir. 2006)(describing the Guidelines as more than "just one factor among many"), overruled on other grounds by Gall v. United States, 552 U.S. 35 (2007).  The Guidelines are significant, because "the Guidelines are an expression of popular political will about sentencing that is entitled to due consideration . . . [and] 'represent at this point eighteen years' worth of careful consideration of the proper sentence for federal offenses.'"  United States v. Cage, 451 F.3d at 593 (quoting United States v. Terrell, 445 F.3d 1261, 1265 (10th Cir. 2006), overruled on other grounds by Rita v. United States, 551 U.S. at 349).  A reasonable sentence is one that "avoid[s] unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).  See United States v. Booker, 543 U.S. at 261-62.

5.     The Tenth Circuit has "joined a number of other circuits in holding that a sentence within the applicable Guidelines range is presumptively reasonable."  United States v. Terrell, 445

F.3d at 1264.  This presumption, however, is an appellate presumption, and not one that the trial

court can or should apply.  See Kimbrough v. United States, 552 U.S. 85, 90-91 (2007); Gall v.

United States, 552 U.S. at 46-47; Rita v. United States, 551 U.S. at 350-51 (repeating that the

presumption of reasonableness "is an *appellate* court presumption" (emphasis in original); United

States v. Conlan, 500 F.3d 1167, 1169-70 (10th Cir. 2007)(stating that "the government rightly

concedes the district court erred in affording a presumption of reasonableness to the recommended

advisory sentence," because "the guideless are presumptively reasonable only at the appellate

level").  Instead, the trial court must undertake the § 3553(a) balancing of factors without any

presumption in favor of the advisory[3] Guidelines sentence.  See Kimbrough v. United States, 552

---

[3]Attorneys and courts often say that the "Guidelines" are advisory, Gall v. United States, 552 U.S. at 46 ("As a result of our decision [in United States v. Booker, 543 U.S. 220 (2005)], the Guidelines are now advisory . . . ."); United States v. Leroy, 298 F. App'x 711, 712 (10th Cir. 2008)(unpublished)("[T]he Guidelines are advisory, not mandatory."); United States v. Sells, 541 F.3d 1227, 1237 (10th Cir. 2008)("[T]he sentence ultimately imposed by the district court was based on a correctly calculated Guidelines range, a stated consideration of the § 3553(a) factors, and an understanding that the Guidelines are advisory."), but it appears more appropriate to say that the resulting Guidelines ranges are advisory.  The Court must consider the Guidelines, see Gall v. United States, 552 U.S. at 46 ("It is . . . clear that a district judge must give serious consideration to the extent of any departure from the Guidelines . . . ."), and must accurately calculate the Guidelines range, see Gall v. United States, 552 U.S. at 49 ("[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range.").  The Court is not mandated, however, to apply a sentence within the calculated Guidelines range.  See United States v. Sierra-Castillo, 405 F.3d 932, 936 n.2 (10th Cir. 2005)("[D]istrict courts post-*Booker* have discretion to assign sentences outside of the Guidelines-authorized range . . . .").  Accord United States v. Chavez-Rodarte, No. CR 08-2499 JB, 2010 WL 3075285, at *2-3 (D.N.M. July 16, 2010)(Browning, J.).

The  Court  must  adhere  to  the  following  three-step  sequence  when sentencing a criminal defendant: first, determining the appropriate sentencing range on  the  basis  of  Guidelines'  chapters  2  through  4;  next,  applying  Guidelines-contemplated departures based on parts 5H and 5K; and, only then, varying from the Guidelines framework on the basis of the § 3553(a) factors taken as a whole. The Court must follow this sequence, because: (i) the Guidelines expressly provide for it, and courts must still consult the Guidelines, even if they will subsequently

U.S. at 90-91; <u>Gall v. United States</u>, 552 U.S. at 46-47; <u>Rita v. United States</u>, 551 U.S. at 351.

While the Supreme Court's decision in <u>United States v. Booker</u> has given the sentencing court discretion that it did not have earlier, the sentencing court's first task remains to accurately and correctly determine the advisory-guideline sentence. Thus, before the sentencing court takes up a defendant's <u>Booker</u> arguments, the sentencing court must first determine whether the defendant is entitled to downward departures. The sentencing court may, however, also use these same departure factors in the <u>Booker</u> calculus, even if the court does not grant a downward departure.

<u>United States v. Apodaca-Leyva</u>, No. CR 07-1479 JB, 2008 WL 2229550, at *6 (D.N.M. Feb. 13, 2008)(Browning, J.). The Supreme Court has recognized, however, that sentencing judges are "'in

---

vary from them in the third step of the sequence; and (ii) adherence to this sequence is the only way to give effect to 18 U.S.C. § 3553(e).

. . . .

The Supreme Court held in <u>United States v. Booker</u> that "district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing," 543 U.S. at 264, but further expounded in <u>Kimbrough v. United States</u> that "courts may vary [from the Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines," 552 U.S. 85, 101 (2007)(alteration in original)(internal quotation marks omitted). In theory, this freedom could mean that a district court may excise individual portions of the Guidelines along the way as it performs an otherwise by-the-book Guidelines , but that she was afraid of his retaliation. , end up with a sentence with built-in variances, and never even know what sentence a true, rigid Guidelines application would yield. In practice, however, appellate courts expect district courts to first obtain the true Guidelines' sentence range and circumscribe their <u>United States v. Booker</u>-granted authority to post-Guidelines analysis "variances." <u>Irizarry v. United States</u>, 553 U.S. 708, 710-16 (2008). A district court that attempts to vary from U.S.S.G. § 1B1.1's basic sequence most likely acts procedurally unreasonably. <u>See</u> <u>Gall v. United States</u>, 552 U.S. 38, 51 (2007)(holding that a sentence is procedurally reasonable if "the district court committed no significant procedural error, <u>such as failing to calculate (or improperly calculating) the Guidelines range</u>, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence" (emphasis added)).

<u>United States v. Nolf</u>, 30 F. Supp. 3d 1200, 1222-24 (D.N.M. June 20, 2014)(Browning, J.).

a superior position to find facts and judge their import under § 3553(a)' in each particular case."

Kimbrough v. United States, 552 U.S. at 89 (quoting Gall v. United States, 552 U.S. at 51).

## **LAW REGARDING SUPERVISED RELEASE**

6.      A district court's decision making with regard to violations of supervised release conditions comes in two phases.  First, at sentencing, the court must decide whether to impose a term of supervised release and, if so, how long a term to impose and what conditions to associate with it.  Second, while the defendant is on supervised release, if the United States accuses the defendant of violating a condition of supervised release, the Court must determine whether the defendant has violated the conditions, whether to revoke supervised release, and, if so, what punishment to impose for the violation.

     **1.**       **Imposition of Supervised Release.**

7.      A court, "in imposing a sentence to a term of imprisonment for a felony or a misdemeanor, may [and sometimes must] include as a part of the sentence a requirement that the defendant be placed on a term of supervised release after imprisonment."  18 U.S.C. § 3583(a). As part of a defendant's supervised release, he is legally bound to abide by certain conditions of his release.  See 18 U.S.C. § 3583(d).  Section 3583 of Title 18 of the United States Code sets forth some of the standard and discretionary conditions that courts shall and may impose as part of supervised release:

> **Conditions of supervised release.** -- The court shall order, as an explicit condition of supervised release, that the defendant not commit another Federal, State, or local crime during the term of supervision and that the defendant not unlawfully possess a controlled substance.  The court shall order as an explicit condition of supervised release for a defendant convicted for the first time of a domestic violence crime as defined in section 3561(b) that the defendant attend a public, private, or private nonprofit offender rehabilitation program that has been approved by the court, in consultation with a State Coalition Against Domestic Violence or other appropriate experts, if an approved program is readily available within a 50-mile radius of the

legal residence of the defendant. The court shall order, as an explicit condition of supervised release for a person required to register under the Sex Offender Registration and Notification Act, that the person comply with the requirements of that Act. The court shall order, as an explicit condition of supervised release, that the defendant cooperate in the collection of a DNA sample from the defendant, if the collection of such a sample is authorized pursuant to section 3 of the DNA Analysis Backlog Elimination Act of 2000. The court shall also order, as an explicit condition of supervised release, that the defendant refrain from any unlawful use of a controlled substance and submit to a drug test within 15 days of release on supervised release and at least 2 periodic drug tests thereafter (as determined by the court) for use of a controlled substance. The condition stated in the preceding sentence may be ameliorated or suspended by the court as provided in section 3563(a)(4). The results of a drug test administered in accordance with the preceding subsection shall be subject to confirmation only if the results are positive, the defendant is subject to possible imprisonment for such failure, and either the defendant denies the accuracy of such test or there is some other reason to question the results of the test. A drug test confirmation shall be a urine drug test confirmed using gas chromatography/mass spectrometry techniques or such test as the Director of the Administrative Office of the United States Courts after consultation with the Secretary of Health and Human Services may determine to be of equivalent accuracy. The court shall consider whether the availability of appropriate substance abuse treatment programs, or an individual's current or past participation in such programs, warrants an exception in accordance with United States Sentencing Commission guidelines from the rule of section 3583(g) when considering any action against a defendant who fails a drug test. The court may order, as a further condition of supervised release, to the extent that such condition--

    **(1)**    is reasonably related to the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D);

    **(2)**    involves no greater deprivation of liberty than is reasonably necessary for the purposes set forth in section 3553(a)(2)(B), (a)(2)(C), and (a)(2)(D); and

    **(3)**    is consistent with any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a);

any condition set forth as a discretionary condition of probation in section 3563(b) and any other condition it considers to be appropriate, provided, however that a condition set forth in subsection 3563(b)(10) shall be imposed only for a violation of a condition of supervised release in accordance with section 3583(e)(2) and only when facilities are available. If an alien defendant is subject to deportation, the court may provide, as a condition of supervised release, that he be deported and remain outside the United States, and may order that he be delivered to a duly authorized immigration official for such deportation. The court may order, as an

explicit condition of supervised release for a person who is a felon and required to register under the Sex Offender Registration and Notification Act, that the person submit his person, and any property, house, residence, vehicle, papers, computer, other electronic communications or data storage devices or media, and effects to search at any time, with or without a warrant, by any law enforcement or probation officer with reasonable suspicion concerning a violation of a condition of supervised release or unlawful conduct by the person, and by any probation officer in the lawful discharge of the officer's supervision functions.

18 U.S.C. § 3583(d).

8.      Thus, § 3583 specifies standard and discretionary conditions of supervised release, while elsewhere Congress has provided for other conduct which, if committed by a defendant on supervised release, can result in a revocation of supervised release.  Among others, § 3583 provides that the defendant not commit another federal, state, or local crime during the term of supervision, that the defendant not possess any controlled substances, and that the defendant cooperate in the collection of a DNA sample.  See 18 U.S.C. § 3583(d).  Further, § 3583 permits a court to craft special conditions of supervised release that it deems appropriate.  See 18 U.S.C. § 3583(d).  Among those conditions not listed in § 3583 is that supervised release may be revoked if the defendant fails to pay a fine or restitution that the court has imposed.  See 18 U.S.C. § 3613A ("Upon a finding that the defendant is in default on a payment of a fine or restitution, the court may, pursuant to section 3565, revoke probation or a term of supervised release . . . .").

9.      In "determining whether to include a term of supervised release, and if a term of supervised release is to be included, in determining the length of the term and the conditions of supervised release," the court "shall consider the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)."  18 U.S.C. § 3583(c).[4]

---

[4]The Court will discuss these eight specific § 3553(a) factors in the next two sections, which focus on a district court's re-imprisonment of a defendant following revocation of a term of supervised release under § 3583(e).  A district court must consider these same eight factors in both

2.      **Revocation of Supervised Release**.

10.     Subsection (e)(3) of § 3583 sets forth the process for revoking supervised release:

(e)     **Modification of conditions or revocation.** -- The court may, after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7) --

. . . .

(3)     revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on postrelease supervision, if the court, pursuant to the Federal Rules of Criminal Procedure applicable to revocation of probation or supervised release, finds by a preponderance of the evidence that the defendant violated a condition of supervised release, except that a defendant whose term is revoked under this paragraph may not be required to serve on any such revocation more than 5 years in prison if the offense that resulted in the term of supervised release is a class A felony, more than 3 years in prison if such offense is a class B felony, more than 2 years in prison if such offense is a class C or D felony, or more than one year in any other case . . . .

18 U.S.C. § 3583(e).  Further, under § 3583(h), "[w]hen a term of supervised release is revoked and the defendant is required to serve a term of imprisonment, the court may include a requirement that the defendant be placed on a term of supervised release after imprisonment."   18 U.S.C.

---

contexts.  It should be noted that 18 U.S.C. § 3583(c) omits § 3553(a)(2)(A) -- which requires a district court to consider "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense -- as one of the factors to be considered in "determining whether to include a term of supervised release . . . the length of the term and the conditions of the supervised release."   Judge Posner of the Seventh Circuit has recently observed regarding this omission: "From the omission of subsection 3553(a)(2)(A), the court in United States v. Murray, 692 F.3d 273, 280 (3d Cir. 2012), inferred 'that the primary purpose of supervised release is to facilitate the reentry of offenders into their communities, rather than to inflict punishment.'"   United States v. Thompson, 2015 WL 151609, at * 2 (7th Cir. Jan. 13, 2015)(Posner, J.).  The Court agrees with that general observation and goal.

§ 3583(h).  See Johnson v. United States, 529 U.S. 694, 712-13 (2000)(holding that even before

the addition of Subsection (h) to the statute in 1994, a plain reading of Subsection (e)(3) authorized

district courts to order terms of supervised release following reimprisonment).  The court must

find all violations of supervised release by a preponderance of the evidence, regardless of whether

the violative conduct itself constitutes criminal conduct.  See 18 U.S.C. § 3583(e).  This standard

is different from the ones that apply to a defendant's violation of supervised release conditions

pending trial -- mere probable cause for criminal violations, and the clear-and-convincing standard

for noncriminal violations.  See 18 U.S.C. § 3148(b)(1).

### 3.    **Sentencing Following the Revocation of Supervised Release.**

11.    Consistent with § 3583(e)(2), the Tenth Circuit has explained: "When a convicted

defendant violates a condition of supervised release, the sentencing judge may revoke the term of

supervised release and impose prison time."  United States v. Patton, 506 F. App'x 729, 731 (10th

Cir. 2012)(Brorby, J.)(unpublished)[5](quoting United States v. Vigil, 696 F.3d 997, 1002 (10th Cir.

---

[5]United States v. Patton is an unpublished opinion, but the Court can rely on an unpublished
Tenth Circuit opinion to the extent its reasoned analysis is persuasive in the case before it.  See
10th Cir. R. 32.1(A)("Unpublished decisions are not precedential, but may be cited for their
persuasive value.").  The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have
> generally determined that citation to unpublished opinions is not favored.
> However, if an unpublished opinion or order and judgment has persuasive value
> with respect to a material issue in a case and would assist the court in its disposition,
> we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).  The Court concludes that United
States v. Patton, United States v. Pacheco, 730 F. App'x 604 (10th Cir. 2018), United States v.
Leroy, 298 F. App'x 711(10th Cir. 2008), United States v. Douglas, 556 F. App'x 747(10th Cir.
2014), United States v. Miller, 608 F. App'x 707 (10th Cir. 2015), United States v. Chatburn, 505
F. App'x 713 (10th Cir. 2012), have persuasive value with respect to a material issue, and will
assist the Court in its disposition of this Memorandum Opinion and Order.

2012)(O'Brien, J.)(citing 18 U.S.C. § 3584(e)).[6]  In doing so, "[t]he judge must consider [certain]

factors in 18 U.S.C. § 3553(a) and the policy statements in Chapter 7 of the Sentencing

Guidelines."  United States v. Patton, 506 F. App'x at 731 (brackets in original).  See 18 U.S.C.

§ 3583(e).  The relevant portion of 18 U.S.C. § 3583(e) concerning revocation of supervised

release provides that "[t]he court may, after considering the factors set forth in section 3553(a)(1),

(a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7) . . . revoke a term of supervised

release, and require the defendant to serve in prison all or part of the term of supervised release."

18 U.S.C. § 3583(e).  The eight relevant § 3553(a) factors are as follows:

> **(1)** the nature and circumstances of the offense and the history and characteristics
> of the defendant;
>
> **(2)** the need for the sentence imposed—
>
>> . . . .
>>
>> **(B)** to afford adequate deterrence to criminal conduct;
>>
>> **(C)** to protect the public from further crimes of the defendant; and
>>
>> **(D)** to provide the defendant with needed educational or vocational training,
>> medical care, or other correctional treatment in the most effective manner;
>
> . . . .
>
> **(4)** the kinds of sentence and the sentencing range established for--
>
>> . . . .

---

[6]As described in the preceding section, under § 3583(h), "[w]hen a term of supervised release is revoked and the defendant is required to serve a term of imprisonment, the court may include a requirement that the defendant be placed on a term of supervised release after imprisonment."  18 U.S.C. § 3583(h).  See Johnson v. United States, 529 U.S. 694, 712-13 (2000)(holding that even before the addition of Subsection (h) to the statute in 1994, a plain reading of Subsection (e)(3) authorized district courts to order terms of supervised release following reimprisonment).  When a defendant violates conditions of his supervised release, therefore, he can be sentenced to imprisonment followed by further supervised release.

- 17 -

**(B)** in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

**(5)** any pertinent policy statement--

**(A)** issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

**(B)** that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

**(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

**(7)** the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).  See United States v. Patton, 506 F. App'x at 731 n.2 (explaining that 18 U.S.C. § 3583(e) lists the § 3553(a) factors to be considered).[7]

---

[7]"Section 3583(e) does not list Section 3553(a)(2)(A) among the factors district courts should consider in modifying or revoking supervised release."  United States v. Penn, 601 F.3d 1007, 1012 (10th Cir. 2010)(Baldock, J.).  The omitted section, § 3553(a)(2)(A), provides that, in determining the sentence to be imposed, the district court "shall consider . . . the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense."  18 U.S.C. § 3553(a)(2)(A).  During Lee's sentencing hearing in this case, the Court mentioned the three factors set forth in § 3553(a)(2)(A), see 2015 Tr. at 29:9-35:4 (Court); however, the Court did so permissibly.

First, the Court did not specifically invoke § 3553(a)(2)(A) of the statute in its short reference to respect for the law, seriousness of the offense, and just punishment.  See United States v. Douglas, 556 F. App'x 747, 750 (10th Cir. 2014)(unpublished)(Holmes, J.).  Second, even assuming that the Court considered and relied upon the factors listed in § 3553(a)(2)(A) in imposing Lee's sentence, doing so was not in error.  The Supreme Court has not addressed whether a district court's consideration of a § 3553(a)(2)(A) factor during revocation sentencing is error.  See United States v. Miller, 608 F. App'x 707, 709 (10th Cir. 2015)(unpublished)(Baldock, J.).

The Circuits are split on the question.  See United States v. Chatburn, 505 F. App'x 713, 717 (10th Cir. 2012)(Matheson, Jr., J.).  The United States Courts of Appeals for the First, Second, Third, Sixth, and Seventh Circuits have concluded that it is not error to consider § 3553(a)(2)(A) factors during revocation sentencing.  See e.g., United States v. Clay, 752 F.3d 1106, 1108-09 (7th Cir. 2014)(Flaum, J.); United States v. Vargas-Davila, 649 F.3d 129, 131-32 (1st Cir. 2011)(Selya, J.); United States v. Young, 634 F.3d 233, 239 (3d Cir. 2011)(Vanaskie, J.); United States v. Lewis, 498 F.3d 393, 399-400 (6th Cir. 2007)(McKeague, J.); United States v. Williams, 443 F.3d 35, 47-48 (2d Cir. 2006)(Kearse, J.).  The United States Court of Appeals for the Fifth and Ninth Circuits, by contrast, have concluded that it is error.  See United States v. Miller, 634 F.3d 841, 844 (5th Cir. 2011)(Garza, J.); United States v. Miqbel, 444 F.3d 1173, 1182 (9th Cir. 2006)(Reinhardt, J.).  The United States Courts of Appeals for the Fourth Circuit initially joined the Fifth and Ninth Circuits, holding that, "[a]ccording to § 3553(a)(2)(A), in devising a revocation sentence the district court is not authorized to consider whether the revocation sentence 'reflect[s] the seriousness of the offense, . . . . promote[s] respect for the law, and . . . provide[s] just punishment for the offense.'"  United States v. Crudup, 461 F.3d 433, 439 (4th Cir. 2006)(Shedd, J.).  Recently, however, the Fourth Circuit limited United States v. Crudup in United States v. Webb:

> A district court's meaningful consideration of the enumerated § 3553(a) factors when imposing a revocation sentence typically will include analysis that furthers the purposes of post-revocation incarceration.  Given that the § 3553(a)(2)(A) factors are closely related to the factors district courts are instructed to consider under § 3583(e), we fail to see how a district court's reference to the § 3553(a)(2)(A) sentencing considerations, without more, would automatically render a sentence unreasonable.  Accordingly, although a district court may not impose a revocation sentence based predominantly on the seriousness of the releasee's violation or the need for the sentence to promote respect for the law and provide just punishment, we conclude that mere reference to such considerations does not render a revocation sentence procedurally unreasonable when those factors are relevant to, and considered in conjunction with, the enumerated § 3553(a) factors.

738 F.3d 638, 641-42 (4th Cir. 2013)(Floyd, J.).  The Ninth Circuit, likewise, later ruled that its holding in United States v. Miqbel, 444 F.3d at 1182, did not make reliance upon a § 3553(a)(2)(A) factor improper per se, explaining:

> [W]e did not set forth a blanket proposition that a court in no circumstances may consider the seriousness of the criminal offense underlying the revocation.  The seriousness of the offense underlying the revocation, though not a focal point of the inquiry, may be considered to a lesser degree as part of the criminal history of the violator . . .
>
> To ignore the new violation underlying the revocation entirely would be to ignore a key predictor of a violator's potential for reintroduction into society without relapse.  The history of the violator, when combined with the violator's most recent

criminal offenses, and particularly when similar to the past transgressions, is indicative of the violator's propensity for recidivism and inability to integrate peacefully into a community.  A history of, for example, drug-related offenses, combined with a drug-related offense underlying revocation, as is the case here, creates a greater likelihood that the violator will relapse into the same or similar criminal activity.  A violator who, after committing an offense and being placed on supervised release for that offense, again commits a similar offense is not only more likely to continue on that path, but also has demonstrated to the court that the violator has little respect for its command.  Because the district court's trust in the violator's ability to coexist in society peacefully has been broken to a greater degree than if the violator had committed a minor offense of a dissimilar nature, greater sanctions may be required to deter future criminal activity.  Consequently, if the nature and the severity of the underlying offense were removed from the equation altogether, the court's ability to predict the violator's potential for recidivism and to punish the violator for the violator's full breach of trust (and, ultimately, to deter the violator and to protect the public) would be impaired significantly.

United States v. Simtob, 485 F.3d 1058, 1062-63 (9th Cir. 2007)(Ezra, J.)(citations omitted).
        The Tenth Circuit has not taken a position on whether it is error for a district court to rely on § 3553(a)(2)(A) for the revocation of a supervised release term.  See United States v. Miller, 608 F. App'x at 709; United States v. Chatburn, 505 F. App'x at 717.

        Recent decisions by panels of this Court indicate that the Tenth Circuit has not definitively resolved the question of whether it is error for a district court to consider § 3553(a)(2)(A) factors when revoking an offender's supervised release. See United States v. Chatburn, 505 Fed. App'x 713, 717 (10th Cir. 2012); United States v. Lockhart, 421 Fed. App'x 877, 880 n.1 (10th Cir. 2011).

United States v. Miller, 608 F. App'x at 709 (quoting United States v. Douglas, 556 Fed. App'x at 750-51.
        To the extent that the Court relied on the factors set forth in § 3553(a)(2)(A) during Lee's sentencing hearing -- the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense -- it was not in error. The Court agrees with the result reached by a majority of the Courts of Appeals, that a district court can consider the § 3553(a)(2)(A) factors in revoking supervised release.  A plain reading of § 3583(e) supports that interpretation.  As the Second Circuit has explained, the enumeration in § 3583(e) of specified subsections of § 3553(a) that a court must consider in revoking supervised release does not mean that it may not take into account any other pertinent factor.  See United States v. Williams, 443 F.3d at 47.  Further, in revoking supervised release, a district court must take into consideration, among other things, "'the nature and circumstances of the offense and the history and characteristics of the defendant,' as well as 'the need for the sentence imposed . . . to afford adequate deterrence to criminal conduct,' and 'to protect the public from further crimes of the defendant.'"  United States v. Young, 634 F.3d at 239 (citations omitted).  Given the other factors that must be considered, "§ 3583(e) cannot reasonably be interpreted to exclude

consideration of the seriousness of the releasee's violation." United States v. Williams, 443 F.3d at 47-48. "Indeed, the 'nature and circumstances of the offense,' a mandatory revocation consideration under § 3583, necessarily encompasses the seriousness of the violation of supervised release." United States v. Young, 634 F.3d at 239.

The Sixth Circuit persuasively affirmed this view in United States v. Lewis, explaining that the omission of § 3553(a)(2)(A) from § 3583(e) cannot prohibit consideration of the factors enumerated in the former section, for the § 3553(a)(2)(A) factors are "essentially redundant with matters courts are already permitted to take into consideration when imposing sentences for violation of supervised release." 498 F.3d at 400. The Sixth Circuit found additional support for this conclusion in United States policy statements:

> [I]n the official introduction to the policy statements regarding supervised release, the Sentencing Commission explains that "the sentence imposed upon revocation . . . [is] intended to sanction the violator for failing to abide by the conditions of the court-ordered supervision." Thus, although violations of supervised release generally do not entail conduct as serious as crimes punishable under the § 3553(a) regime, revocation sentences are similarly intended to "sanction," or, analogously, to "provide just punishment for the offense" of violating supervised release. Given that the three considerations in § 3553(a)(2)(A) are consistent with considerations already permissible for revocation sentences, the fact that § 3583(e) does not require that courts consider § 3553(a)(2)(A) does not mean that courts are forbidden to consider that factor, and the fact that a sentencing court does consider § 3553(a)(2)(A) is not error.

United States v. Lewis, 498 F.3d at 400 (citations omitted)(brackets in original).

For these reasons, the Court's consideration of, and reference to, the § 3553(a)(2)(A) factors in imposing Lee's sentence for the violation of supervised release is not a procedural error that makes the sentence per se unreasonable. Further, even under Fourth and Ninth Circuit precedent, the sentence was not in error, for the Court did not place undue weight or base its sentence "predominantly on the seriousness of the releasee's violation or the need for the sentence to promote respect for the law and provide just punishment." United States v. Webb, 738 F.3d at 641-42. Rather, the Court merely referenced the § 3553(a)(2)(A) factors in passing, and they were considered in conjunction with the eight § 3553(a) factors explicitly enumerated in § 3583(e). Finally, even if the Court had excluded or changed any reference to the § 3553(a)(2)(A) factors, the Court would have reached the same result, because there is some overlap between other § 3583(e) factors and the factors set forth in § 3553(a)(2)(A). Further, it is difficult if not impossible to not consider the § 3553(a)(2)(A) factors in any sentencing, even if they are not expressly mentioned.

The Court believes the solution and best practice is to always keep in mind what Judge Posner and the Third Circuit have emphasized -- "that the primary purpose of supervised release is to facilitate the reentry of offenders into their communities, rather than to inflict punishment." United States v. Thompson, 2015 WL 151609, at *2 (quoting United States v. Murray, 692 F.3d 273, 280 (3d Cir. 2012)(Fuentes, J.)). Even if the Court considers respect for the law, just punishment, and the seriousness of the offense, it should be mindful that all it does should help the

12.     In particular, a district court must consider the policy statements in Chapter 7 of the Sentencing Guidelines before imposing a sentence for violations of the conditions of supervised release.  See United States v. Vigil, 696 F.3d at 1002; United States v. Kelley, 359 F.3d 1302, 1304-05 (10th Cir. 2004)(Ebel, J.).  The Guidelines' commentary is generally an authoritative interpretation of the rules contained therein.  See Stinson v. United States, 508 U.S. 36, 38 (1993).  "[T]he Chapter 7 provisions dealing with violations of supervised release are not mandatory sentencing guidelines; rather, they merely constitute advisory policy statements." United States v. Vigil, 696 F.3d at 1002 (quoting United States v. Contreras-Martinez, 409 F.3d 1236, 1240 (10th Cir. 2005)(Seymour, J.)(citations and quotation marks omitted)).  See United States v. Hurst, 78 F.3d 482, 483 (10th Cir. 1996)(Brorby, J.)("[T]he policy statements regarding revocation of supervised release contained in Chapter 7 of the U.S.S.G.[, including U.S.S.G. § 7B1.4(a),] are advisory rather than mandatory in nature"; a sentencing court simply considers them "in its deliberations concerning punishment for violation of conditions of supervised release.")(citations and internal quotation marks omitted).

---

defendant ease back into society after a sometimes lengthy prison sentence, and not try to punish the defendant, although sometimes punishment -- incarceration -- is needed and expressly authorized to get the defendant to do what the Court and the USPO tell him or her to do.

    The Court makes one other observation.  When Congress and the Court says the word "offense" at a violation hearing, the question is whether it is referring to the underlying offense or to the violation.  The Court can consider both, but again, in meeting the goals of supervised release, the emphasis should be on the violation, not the underlying offense.  For example, when it considers the "nature and circumstances of the offense," it may consider how the defendant arrived before the Court, but its focus and emphasis in coming up with a disposition, should be on the nature and circumstances of the new violation.  If the Court is going to consider the seriousness of the offense, the seriousness of the underlying offense is largely irrelevant, unless the violation is just the same thing as the underlying offense.  In any case, the focus and emphasis, if seriousness is considered at all, should be on the seriousness of the new violation.

13.     "All discussions of applicable sentences before a district court following the revocation of supervised release should be grounded in the common understanding that the district court may impose any sentence within the statutory maximum."  United States v. Vigil, 696 F.3d at 1002 (quoting United States v. Burdex, 100 F.3d 882, 885 (10th Cir. 1996)(Henry, J.)(citations and quotation marks omitted)).  While district courts are required to consider Chapter 7's policy statements in imposing sentences after revocation of supervised release, "[m]agic words . . . are not required to demonstrate fulfillment of this requirement."  United States v. Vigil, 696 F.3d at 1002 (quoting United States v. Tedford, 405 F.3d 1159, 1161 (10th Cir. 2005)(McKay, J.)(citations omitted)).  "Rather, it is enough if the district court considers § 3553(a) en masse and states its reasons for imposing a given sentence."  United States v. Penn, 601 F.3d at 1011.

## LAW REGARDING REVOCATION AND REVOCATION HEARINGS

14.     Subsection (e)(3) of § 3583 permits courts to revoke supervised release on the conclusion that the defendant violated a condition of probation by a preponderance of the evidence.  See 18 U.S.C. § 3583(e).  Section 3583(e)(3) sets forth the process for revoking supervised release:

>   **(e)     Modification of conditions or revocation.** -- The court may, after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7) --
>   . . . .
>       (3)     revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on postrelease supervision, if the court, pursuant to the Federal Rules of Criminal Procedure applicable to revocation of probation or supervised release, finds by a preponderance of the evidence that the defendant violated a condition of supervised release, except that a defendant whose term is revoked under this paragraph may not be required to serve on any such revocation more than 5 years in prison if the offense that resulted in the term of supervised release is a class A felony, more than 3 years in

- 23 -

> prison if such offense is a class B felony, more than 2 years in prison if such offense is a class C or D felony, or more than one year in any other case . . . .

18 U.S.C. § 3583(e)(bold in original).  "Preponderance of the evidence" means:

> The greater weight of the evidence, not necessarily established by the greater number of witnesses testifying to a fact but by evidence that has the most convincing force; superior evidentiary weight that, though not sufficient to free the mind wholly from all reasonable doubt, is still sufficient to incline a fair and impartial mind to one side of the issue rather than the other.

"Preponderance of the Evidence," Black's Law Dictionary (10th ed. 2014).

15.    "The Sixth Amendment [to the Constitution of the United States of America] is a trial right and does not apply to pretrial proceedings."  United States v. Hernandez, 778 F. Supp. 2d 1211, 1225 (D.N.M. 2011)(Browning, J.).  The Tenth Circuit has suggested that the Sixth Amendment applies only to trial proceedings.  See United States v. Bustamante, 454 F.3d 1200, 1202 (10th Cir. 2006).  But rule 32.1 of the Federal Rules of Criminal Procedure gives the defendant at the revocation hearing "an opportunity to appear, present evidence, and question any adverse witness unless the court determines that the interest of justice does not require the witness to appear."  Fed. R. Crim. P. 32.1(b)(2)(c).  Rule 32.1's notes instruct courts to apply a balancing test that weighs "the person's interest in the constitutionally guaranteed right to confrontation against the government's good cause for denying it."  Rule 32.1 Advisory Committee's Note to the 2012 Amendment.  The Tenth Circuit has adopted the balancing test "when determining a releasee's confrontation rights at a revocation hearing."  United States v. Jones, 818 F.3d at 1099. When applying the balancing test, the Court must weigh the defendant's interest in cross-examining and confronting the witness with the government's good cause for not presenting the witness.  See United States v. Jones, 818 F.3d at 1098 (citing Rule 32.1's Advisory Committee Note to the 2002 Amendment).

## ANALYSIS

The Court concludes by a preponderance of the evidence that Green assaulted Havink and, therefore, that he committed the crime of Aggravated Battery Against a Household Member, N.M.S.A. § 30-3-16.  Because Green violated a state law, he violated a mandatory term of his supervised release.  Consequently, revocation of supervised release is appropriate.

In New Mexico, the Aggravated Battery Against a Household Member statute, N.M.S.A. § 30-3-16, states:

> C.    Whoever commits aggravated battery against a household member is guilty of a third degree felony if the aggravated battery against a household member is committed:
>
> > (1)    by inflicting great bodily harm;
> >
> > (2)    with a deadly weapon;
> >
> > (3)    by strangulation or suffocation; or
> >
> > (4)    in any manner whereby great bodily harm or death can be inflicted.

N.M.S.A. § 30-3-16(C).  N.M.S.A. § 30-3-11 defines "household member" as

> a spouse, former spouse, parent, present or former stepparent, present or former parent in-law, grandparent, grandparent-in-law, a co-parent of a child or a person with whom a person has had a continuing personal relationship.  Cohabitation is not necessary to be deemed a household member for the purposes of the Crimes Against Household Members Act.

N.M.S.A. § 30-3-11.  The United States Court of Appeals for the Tenth Circuit has noted in an unpublished opinion that a court should read N.M.S.A. § 30-3-16's elements in the alternative.  See United States v. Pacheco, 730 F. App'x 604, 607 (10th Cir. 2018)(unpublished).  That is, to commit the crime of Aggravated Battery Against a Household Member, a person must inflict great bodily

harm, either by using a deadly weapon, by strangulation or suffocation, or in any manner whereby great bodily harm or death can be inflicted.  See United States v. Pacheco, 730 F. App'x at 607.[8]

The Court finds by a preponderance of the evidence that Green committed the crime of Aggravated Battery Against a Household Member when he strangled Havink and caused the injury to her left eye.  First, Havink is Green's household member, because Havink is a person with whom Green has had a continuing personal relationship.  See N.M.S.A. § 30-3-11; N.M.S.A. § 30-3-16.  See also Tr. at 207:20-22 ("Q. So just to clear up things, you and Dana were in an intimate relationship; correct? A. Sex, yes, ma'am.")(Camacho, Green).  Second, Green caused Havink great bodily harm through strangulation, because Green strangled Havink, which caused her to lose consciousness, and gave her a serious injury to her left eye, including bruising and discoloration.  See N.M.S.A. § 30-3-16.  The Court concludes, therefore, that Green violated his terms of supervised release by committing a new State crime.  Accordingly, the Court will revoke Green's supervised release for violation of the special condition.

**IT IS ORDERED** that: (i) the Court finds that Defendant Ricky Barksdale Green has violated the mandatory condition that he not violate any federal, state, or local law; (ii) the violation is a grade A violation; (iii) Green has a criminal history category of III; and (iv) the recommended revocation imprisonment range is 30 to 37 months.

---

[8]At the time that the Tenth Circuit decided United States v. Pacheco, N.M.S.A. § 30-3-16 read: "Whoever commits aggravated battery against a household member by inflicting great bodily harm or doing so with a deadly weapon or doing so in any manner whereby great bodily harm or death can be inflicted is guilty of a third degree felony."  N.M.S.A. § 30-3-16 (2018).  The Tenth Circuit concluded that, based on New Mexico's Uniform Jury Instructions, NMRA, Crim. UJI 14-392, the crime involves inflicting great bodily harm either with a deadly weapon or in any manner whereby great bodily harm or death can be inflicted.  N.M.S.A. § 30-3-16 was amended, effective July 1, 2018, to include "by strangulation or suffocation" as a means of committing the third-degree felony of Aggravated Battery Against a Household Member.  N.M.S.A. § 30-3-16.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Fred J. Federici
   Acting United States Attorney
Renee L. Camacho
   Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

       *Attorneys for the Plaintiff*

Brian G. Grayson
Grayson Law Office, LLC
Albuquerque, New Mexico

-- and --

Daniel J. Tallon
Daniel J. Tallon, Attorney at Law
Placitas, New Mexico

       *Attorneys for the Defendant*