## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                                    No. CR 06-2605 JB

RICKY BARKSDALE GREEN,

      Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on the Opposed Motion in Limine Regarding Hearsay Evidence at Final Revocation Hearing and Request for Discovery, filed September 2, 2021 (Doc. 315)("Motion in Limine").  The Court held evidentiary hearings on the Motion in Limine and on the United States Probation Office's ("USPO") Third Amended Petition for Revocation of Supervised Release, filed October 20, 2021 (Doc. 320)("Revocation Petition"), on October 27, 2021 and November 30, 2021.  <u>See</u> Clerk's Minutes at 1, filed October 27, 2021 (Doc. 327); Clerk's Minutes at 1, filed November 3, 2021 (Doc. 336).  The primary issues are: (i) whether the Court should preclude Plaintiff United States of America from using hearsay evidence instead of live testimony from the alleged victim, Dana Havink,[1] at Defendant Ricky Barksdale Green's hearing for revocation of supervised release; and (ii) whether the United States should provide Green with victim and crime scene photographs, Dana Havink's medical reports, body camera footage, and police reports.  For the reasons stated on the record at the October 27, 2021, hearing, the Court grants the Motion in Limine with respect to Green's request for discovery materials.  For

---

[1]Dana Havink also goes by the name Dana Sanford.  The Court understands any reference to Dana Sanford in the parties' briefing and in case documents to be referring to Dana Havink.

the reasons stated below, the Court concludes that the United States is not precluded from using hearsay evidence instead of Havink's live testimony, because the United States and law enforcement cannot locate Havink, despite their diligence in attempting to locate Havink, and that Havink's statements are sufficiently reliable. Consequently, the Court will deny the Motion in Limine with respect to the United States using hearsay evidence.

## FACTUAL AND PROCEDURAL BACKGROUND

The Court incorporates the Procedural Background of Green's case from its Memorandum Order and Opinion at 1-2, filed February 14, 2022 (Doc. 343). On March 28, 2008, a jury found Green guilty of: (i) possession with intent to distribute 5 grams or more of cocaine base; (ii) possession with intent to distribute less than 500 grams of cocaine; (iii) possession with intent to distribute 5 grams or more of methamphetamine; (iv) possession of a firearm in furtherance of a drug trafficking crime; and (v) being a felon in possession of a firearm or ammunition. See Jury Verdict at 1-2, filed March 28, 2008 (Doc. 181). The Honorable M. Christina Armijo, United States District Judge for the United States District Court for the District of New Mexico, sentenced Green to 180 months of imprisonment in the Bureau of Prisons' custody. See Amended Judgment at 3, filed October 1, 2008 (Doc. 218). Judge Armijo also sentenced Green to eight years of supervised release. See Amended Judgment at 4. Green's mandatory supervised release conditions state: "The defendant shall not commit another federal, state, or local crime." Amended Judgment at 4. Green's mandatory supervised release conditions also state: "The defendant shall refrain from any unlawful use of a controlled substance." Amended Judgment at 4. Green was released from BOP custody on January 8, 2020, and began his supervised release term at that time. See Revocation Petition at 1. On August 17, 2020, Green was arrested for violating his supervised release by committing the crime of Aggravated Battery on a Household Member, Interfering with

Communications, and False Imprisonment after police arrived at Havink's home, and found her with injuries and bruising on her face and neck.  See Arrest Warrant Returned Executed, filed August 19, 2020 (Doc. 281).

Green filed his Motion in Limine on September 2, 2021.  See Motion in Limine at 1.  First, Green argues that none of Havink's statements fall under an established exception to the hearsay rule and, specifically, that Havink's statements are not excited utterances.  See Motion in Limine ¶ 36, at 10.  Next, Green argues that Green's right to confront Havink is "highly important and critical."  Motion in Limine ¶ 48, at 13.  Green argues that Havink's out-of-court statements are "the only evidence the government now intends to rely upon to carry its burden."  Motion in Limine ¶ 49, at 13.  Further, Green argues that the alleged domestic violence event had no witnesses, and that the "lack of documentation of physical evidence, voluntary intoxication by alcohol and/or drugs, criminal history, raise important questions as to the 'accuracy and reliability of proffered evidence.'"  Motion in Limine ¶ 49, at 13 (quoting Motion in Limine ¶ 24, at 7).

The United States responds.  See United States' Response to Defendant's Motion in Limine Regarding Hearsay Evidence at Final Revocation Hearing and Request for Discovery, filed September 20, 2021 (Doc. 317)("Motion in Limine Response").   In the Motion in Limine Response, the United States notes that "Ms. [Havink]'s current whereabouts are unknown. The United States will continue to attempt to locate Ms. [Havink] and secure her presence at the final hearing in this matter, but it is not likely that she will be located."  Motion in Limine Response at 3.  The United States argues that the balancing test in United States v. Jones, 818 F.3d 1091 (10th Cir. 2016), weighs in favor of allowing the United States to present hearsay testimony regarding Havink's out-of-court statements.  See Motion in Limine Response at 10 (citing United States v. Jones, 818 F.3d at 1098).  First, the United States argues that it has good cause for not presenting

Havink's live testimony, because Officer Dalton Hacker has attempted unsuccessfully to contact Havink several times, Havink's location is unknown, and the United States has no way of contacting or locating her.  See Motion in Limine Response at 10.  The United States also contends that, even if it were to locate Havink, it is unlikely that she would comply with a subpoena to testify, as she declined to testify in the State case against Green on the same charges.  See Motion in Limine Response at 10.  Second, the United States argues that photographic and body camera evidence of Havink's injuries evidence corroborates Havink's out-of-court statements to Hacker. See Motion in Limine Response at 11.  The United States also argues that Havink's hesitancy to speak with officers about how her injuries occurred until she was in an ambulance and away from Green is "consistent with the actions of someone who had been abused by the defendant and who was consequently afraid of him."  Motion in Limine Response at 11.  Third, the United States agrees with Green that Havink's statements are not excited utterances; however, the United States argues that the statements are reliable, because they were made in close proximity to the injury, and because they were made to police after police arrived to help Havink.  See Motion in Limine Response at 12.

        Green replies.  See Reply to Response to Opposed Motion in Limine Regarding Hearsay Evidence at Final Revocation Hearing and Request for Discovery, filed October 4, 2021 (Doc. 318)("Motion in Limine Reply").  Green argues that he has a special need to confront Havink, because Green and Havink were in an intimate relationship, and there may be relationship bias between Green and Havink.  See Motion in Limine Reply ¶ 7, at 3.  Further, Green argues that the United States' assertion that Havink likely would not comply with a subpoena to testify is not an adequate reason to justify her absence.  See Motion in Limine Reply ¶ 8, at 3-4.  Green also contends that the United States' speculation about Havink's absence, absent a subpoena for her to

testify, is inadequate to justify her absence. <u>See</u> Motion in Limine Reply ¶ 9, at 4. Green argues that "Ms. Havink's only statement/allegation against Mr. Green provided to defense counsel took place during a 4.5-minute examination of Ms. Havink called as kind of a ruse by Officer Hacker." Motion in Limine Reply ¶ 10, at 4. Finally, Green argues that "[n]o photographs of Ms. Havink's neck area were taken at either one of her two encounters with police and, if they were taken on a subsequent date, those photographs are unretrievable due to a corrupted disk and will never be seen," and, therefore, there is no physical evidence to support Havink's out-of-court statements. Motion in Limine Reply ¶ 16, at 6.

## LAW REGARDING HEARSAY IN REVOCATION HEARINGS

"The Sixth Amendment [to the Constitution of the United States of America] is a trial right and does not apply to pretrial proceedings." <u>United States v. Hernandez</u>, 778 F. Supp. 2d 1211, 1225 (D.N.M. 2011)(Browning, J.). The United States Court of Appeals for the Tenth Circuit has suggested that the Sixth Amendment applies only to trial proceedings. <u>See</u> <u>United States v. Bustamante</u>, 454 F.3d 1200, 1202 (10th Cir. 2006). Rule 32.1 of the Federal Rules of Criminal Procedure gives the defendant at the revocation hearing "an opportunity to appear, present evidence, and question any adverse witness unless the court determines that the interest of justice does not require the witness to appear." Fed. R. Crim. P. 32.1(b)(2)(C). Rule 32.1's notes instruct courts to apply a balancing test that weighs "the person's interest in the constitutionally guaranteed right to confrontation against the government's good cause for denying it." Rule 32.1 Advisory Committee's Note to the 2012 Amendment. The Tenth Circuit has adopted the balancing test "when determining a releasee's confrontation rights at a revocation hearing." <u>United States v. Jones</u>, 818 F.3d at 1099. When applying the balancing test, the court must weigh the defendant's interest in cross-examining and confronting the witness with the government's good cause for not

presenting the witness.  See United States v. Jones, 818 F.3d at 1098 (citing Rule 32.1's Advisory Committee Note to the 2002 Amendment).  Moreover, the due process guarantees at revocation hearings are minimal, and "the process should be flexible enough to consider evidence . . . that would not be admissible in an adversary criminal trial."  Morrissey v. Brewer, 408 U.S. 471, 485 (1972).  See United States v. Henry, 852 F.3d 1204, 1206 (10th Cir. 2017).  See also Gagnon v. Scarpelli, 411 U.S. 778, 782 n.5 (1973)("While in some cases there is simply no adequate alternative to live testimony, we emphasize that we did not in Morrissey intend to prohibit use where appropriate of the conventional substitutes for live testimony, including affidavits, depositions, and documentary evidence.")

The Tenth Circuit also has noted that "'reliability is a very important factor in determining the strength of a releasee's confrontation right.'"  See United States v. Jones, 818 F.3d at 1098 (quoting Curtis v. Chester, 626 F.3d 540, 546 (10th Cir. 2010)).  In United States v. Jones, the Tenth Circuit concludes that the district court abused its discretion by not applying the rule 32.1(b)(2)(C) balancing test when it merely stated that it "weighed the reliability of the hearsay evidence against the 'gravity of the matter.'"  United States v. Jones, 818 F.3d at 1100 (quoting Record on Appeal, Vol. I at 43).  The Tenth Circuit advises that "reliability is relevant to determine [the defendant's] interest in confrontation," but that a district court should also consider the defendant's interest in cross-examination.  United States v. Jones, 818 F.3d at 1100-01.  Further, the Tenth Circuit notes that the balancing test's second part includes the district court's consideration of "the Government's explanation for failing to present . . . [the] witness."  United States v. Jones, 818 F.3d at 1101.  See United States v. Murphy, 769 F. App'x 631, 633-34 (10th

Cir. 2019)(unpublished)[2](noting that the Tenth Circuit has said that "the 'reliability' of the hearsay statements and the defendant's 'interest in cross-examination' are relevant to the defendant's interest in confrontation," and that a court should "weigh these considerations against 'the Government's explanation for failing to present' a witness")(quoting United States v. Jones, 818 F.3d at 1100-01). Moreover, in United States v. Henry, 852 F.3d 1204 (10th Cir. 2017), the Tenth Circuit again emphasizes that both rule 32.1 and United States v. Jones mandate that the district court conduct a balancing test rather than merely citing the standard. See United States v. Henry, 852 F.3d at 1208. See also United States v. Davis, 802 F. App'x 318, 323 (10th Cir. 2020)(unpublished)("There is reason to doubt the government's assertion the district court satisfied its obligation to balance the factors set out in Rule 32.1(b)(2)(C) by merely granting the government's motion to adduce hearsay evidence.").

In United States v. Hernandez, 428 F. Supp. 3d 775 (D.N.M. 2019)(Browning, J.), the Court conducted the rule 32.1 balancing test regarding testimony in Hernandez' revocation hearing for which Hernandez allegedly violated his supervised release by committing two crimes: battery

---

[2]United States v. Murphy is an unpublished opinion, but the Court can rely on a Tenth Circuit unpublished opinion to the extent that its reasoned analysis is persuasive in the case before it. See 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005). The Court concludes that United States v. Murphy and United States v. Davis, 802 F. App'x 318 (10th Cir. 2020), have persuasive value with respect to a material issue, and will assist the Court in its disposition of this Memorandum Opinion and Order.

of a household member and criminal damage to property.  See 428 F. Supp. 3d at 780.  In

considering Hernandez' interest in confronting three witnesses who were absent from Hernandez'

revocation hearing, the Court stated:

> First, Hernandez, like any defendant, has an interest in confronting individuals
> testifying against him, and he has a[] special need to confront Angulo.[3]  See United
> States v. Jones, 818 F.3d at 1099-100.  Like the defendant in United States v. Jones,
> Hernandez has a[] special need to confront Angulo because of two "textbook bases
> for cross-examin[ing]": (i)"exploring possible bias," because of her relationship
> with Hernandez; and (ii) "asking why [Angulo] refused to cooperate in the state"
> case, "a matter on which the parties and the court could only posit educated guesses
> without her testimony."  United States v. Jones, 818 F.3d at 1101.  Moreover,
> "generally recognized concerns with eyewitness testimony" strengthen Hernandez'
> interest in confronting Angulo.  See United States v. Jones, 818 F.3d at 1101.
> Second, Hernandez has an interest in confronting the Rio Rancho police officer
> who conveyed the information from Angulo's call to the responding officers, but
> the Court concludes that his interest in confronting this police officer is mitigated
> by the reliability of the Rio Rancho Police Department in calling officers to the
> scene of the crime and conveying facts about the crime scene to other officers.  Such
> information may raise some reliability concerns, however, because a third party
> might have given the Rio Rancho Police Department officer information about the
> incident.  Third, Hernandez has an interest in confronting his sister M. Hernandez,
> who described Hernandez' alleged assault of Angulo to the responding officers.  M.
> Hernandez' familial relationship with Hernandez heightens her potential bias.
> Hernandez, thus, has an interest in confronting Angulo, the Rio Rancho police
> officer, and M. Hernandez.

United States v. Hernandez, 428 F. Supp. 3d at 788-89.  The Court then considers the United

States' reason for not presenting the witnesses at Hernandez' revocation hearing.  See United

States v. Hernandez, 428 F. Supp. 3d at 789.  First, the Court notes that "the United States was

silent as to Angulo's absence."  While the United States notes that Angulo moved to California

and would not cooperate in the state battery case, the Court concludes "that information supports

only speculation."  United States v. Hernandez, 428 F. Supp. 3d at 789.  Consequently, the Court

---

[3]Brianna Angulo is Hernandez' girlfriend, whom the United States alleges Hernandez
punched in the face, leading to the charge for battery of a household member.  See United States
v. Hernandez, 428 F. Supp. 3d at 780.

concludes that "Hernandez' need to confront Angulo outweighs the United States' good cause for her absence." United States v. Hernandez, 428 F. Supp. 3d at 789.  Second, the Court notes: "The United States has not given any reason to explain the Rio Rancho Police Department officer's absence or M. Hernandez' absence." United States v. Hernandez, 428 F. Supp. 3d at 789 (citing United States v. Jones, 818 F.3d at 1102 (concluding that fear of retaliation did not adequately explain a witness' absence where the United States did not ask or subpoena the witness to attend)).

In United States v. Francis, No. CR 16-4222 WJ, 2022 WL 601137 (D.N.M. March 1, 2022)(Johnson, C.J.), the Honorable William Johnson, Chief United States District Judge in the United States District Court for the District of New Mexico, performs the rule 32.1 balancing test when the defendant "requested this Court to reconsider its finding that he committed domestic violence and battery," which resulted in his supervised release revocation. United States v. Francis, 2022 WL 601137 at *1.  Chief Judge Johnson first weighs the defendant's interest:

> Defendant certainly had an interest in cross examining Jane Doe regarding a text message she sent to Defendant about an allegedly abusive ex-boyfriend, the lack of background noise indicating violence on the 911 call, the timeline of when her injuries were documented, and her failure to appear at a pretrial interview.

United States v. Francis, 2022 WL 601137 at *2.  Chief Judge Johnson also notes that the "Government refrained from calling Jane Doe at the revocation hearing to avoid interfering with the tribal court prosecution" that concerns the defendant's same underlying conduct that led to the revocation hearing. United States v. Francis, 2022 WL 601137 at *2.  Finally, Chief Judge Johnson considers the hearsay's reliability, and notes that the victim's statements were captured on an officer's lapel camera, were consistently given to different officers, and "her description of the battery matched the visible injuries on her body." United States v. Francis, 2022 WL 601137 at

*2. Consequently, Chief Judge Johnson declines to reverse his previous ruling that the hearsay statements are admissible.  See United States v. Francis, 2022 WL 601137 at *2.

## ANALYSIS

In deciding whether the Court will consider Havink's hearsay statements here, the Court will balance Green's interest in cross-examining Havink, the United States' reason for not presenting Havink's live testimony, and the hearsay statements' reliability.  See  Green, like any defendant, has an interest in cross-examining an individual testifying against him.  See United States v. Trujillo, No. CR 20-0221 JB, 2020 WL 5603762, at *7 (D.N.M. September 18, 2020)(Browning, J.)("R. Trujillo, like any defendant, has an interest in confronting and cross-examining individuals testifying against him, and he has a strong interest in confronting and cross-examining J. Trujillo.").  Green has a strong interest in confronting Havink -- who was his girlfriend at the time of the alleged assault and who is the victim of the crime -- about how the injuries to her face occurred, about her initial statements to the police that she fell and hit her eye, about the photograph of her injuries that Havink sent to an ex-boyfriend who contacted the police, about the timing of the photographs of her injuries, and about the fact that she did not testify on the state charges against Green for the same alleged assault.

The Court next considers the United States' reason for not presenting Havink's live testimony.  The United States notes that "Ms. [Havink]'s current whereabouts are unknown.  The United States will continue to attempt to locate Ms. [Havink] and secure her presence at the final hearing in this matter, but it is not likely that she will be located."  Motion in Limine Response at 3.  Moreover, at the October 27, 2021, hearing, the United States explained:

> We have made [an] effort to locate her. . . . Officer Hacker actually had a phone number for Ms. [Havink] following this incident . . . .  He had not ever had previous contact with her, but following this incident, he did have a phone number for her.

And actually made contact with her on a subsequent occasion.  He had learned that she had a warrant out for her arrest and he called her and she turned herself in on that warrant.  However, subsequent to that he has not been able to contact her or locate her.  He has at my request tried to call that phone number several times, and receives no answer.  He's been told by other officers that she may be hiding out in Texas with her brother.  We don't really know what she's hiding from, . . . and just yesterday Officer Hacker told me that in a more recent incident he had been informed by other officers that Ms. [Havink] . . . actually called the police saying that she was a victim of a battery and Officer Hacker learned of that, asked the officers [--] you know when you get there[,] I need to contact her[,] please let me know, and when the officers responded to the scene they could not find Ms. [Havink].  So she was never able to be located.  But the Government has made efforts and we have not been able to locate her, and so obviously she [was] not subpoenaed to be here, because we can't locate her to serve her with a subpoena.  It is also likely that if even if she were subpoenaed she might well not appear.  It's my understanding the state case of battery, aggravated battery on a household member[,] was dismissed because she was not willing to go forward and testify [which] is . . . too often the case in domestic battery cases[.]  [S]he was not willing to follow through with the prosecution.  And so even if we were able to locate her[,] I'm not sure that she would appear.  But regardless of that we have not been able to locate her.  We do not know where she's at.  We have no ability to find her or serve her, so I believe that we have complied in good faith with the attempts to find her, and bring her to Court today.

Draft Transcript of October 27, 2021, Hearing at 34:2-35:20 (taken Oct. 27, 2021)(Camacho)("Tr.").[4]

Finally, the Court considers whether Havink's hearsay statements are reliable.  The United States argues that photographs of Havink's injuries corroborate her statements regarding her injuries, and that, while Havink initially said she fell and hit her eye when Green was present, Havink told Hacker how she got her injuries once she was separated from Green.  See Tr. at 35:22-36-18 (Camacho).  Moreover, the United States contends that Havink's hesitancy to speak with officers about how her injuries occurred until she was in an ambulance and away from Green is "consistent with the actions of someone who had been abused by the defendant and who was

---

[4]The Court's citations to the transcript of the hearing refers to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

consequently afraid of him." Motion in Limine Response at 11. The Court agrees with the United States that Havink's statements to Hacker are reliable. First, the Court notes that photographs of Havink's eye display injuries consistent with battery. See First Photograph of Havink (taken August 16, 2020)(admitted at Revocation Hearing on October 27, 2021, as Government's Exhibit 2); Second Photograph of Havink (taken August 16, 2020)(admitted at Revocation Hearing on October 27, 2021 as Government's Exhibit 3). Second, the Court notes that Havink told Hacker that Green strangled her, caused her to black out, and caused the injuries to her face, see Tr. at 69-3-13 (Hacker), and she texted Green's probation officer, Eduardo Castenada, photographs of her injuries, stating: "'I'm not sure why the marks don't show where he choked me. There is a mark on the back of my neck where he held me down,'" Tr. 143:2-4 (Castenada)(quoting Text Message from Dana Havink to Eduardo Castenada (dated August 17, 2020)(admitted at Revocation Hearing on October 27, 2021, as Government's Exhibit 4)). Third, the Court agrees with the United States that, although Havink initially told Hacker that she got the injury to her eye from falling, her demeanor on the body camera footage when Green is present is consistent with someone who is afraid of their attacker and does not render her later statements outside of Green's presence inherently unreliable. See Officer Hacker Body Camera Footage at 1:20-1:50 (dated August 16, 2020)(admitted at Revocation Hearing on October 27, 2021, as Government's Exhibit 6)(showing Havink glancing over her shoulder); id. at 2:15-2:30 (appearing nervous and skittish); id. at 3:20-3:24 (showing Havink nodding in response to Hacker asking: "But he was the one who did this to you?", referring to Green). Moreover, when Havink entered the ambulance with Officer Hacker, outside of Green's presence, she told Hacker that Green hit her "when she told him that he didn't want him around." Officer Hacker Body Camera Footage at 14:26-14:40. When Hacker told Havink he was going to arrest Green, Havink also stated: "I don't want him to know that I said

anything."  Officer Hacker Body Camera Footage at 15:35-15:40.  In the ambulance, Havink also pointed out bruises on her neck to the Emergency Medical Technician ("EMT") and Hacker.  See Officer Hacker Body Camera Footage at 16:08-16:30 (telling the EMT that Green grabbed her by the neck).  Further, when Hacker tells Havink that Green likely would still be released after he is arrested, Havink states: "He'll kill me."  Officer Hacker Body Camera Footage at 17:20-17:30.  Moreover, after Hacker arrests Green, Havink provides Hacker a full statement that is captured on the body camera footage in which Havink describes Green strangling her, causing her to lose consciousness, and her waking up with a black eye.  See Officer Hacker Body Camera Footage at 29:50-32:30.  Because Havink's statements were recorded on Hacker's body camera footage, there is good evidence that Havink made consistent statements to Hacker, the EMT, and Castenada, and her description of the assault matches the injuries depicted on the body camera footage and in the photographs of her injuries.  The Court concludes, therefore, that Havink's hearsay statements are sufficiently reliable.  See United States v. Francis, 2022 WL 601137 at *2 (finding reliability where the missing witnesses' statements "were captured on the officer's lapel camera, her statements given to different officers were consistent, and her description of the battery matched the visible injuries on her body").

While Green has a strong interest in confronting and cross-examining Havink, the United States has presented the Court with good reason for her absence.  The United States has acted diligently to try to secure Havink's testimony by calling her several times at her only known telephone number, asking other officers about her and attempting to locate her at the scene of another crime in which she was a victim.  See Tr. at 34:2-35:20 (Camacho).  Moreover, Havink's hearsay statements are sufficiently reliable.  Accordingly, when balancing Green's "interest in the constitutionally guaranteed right to confrontation against the government's good cause for denying

it," the Court concludes that the United States has demonstrated good cause for not presenting Havink's testimony that, when considered with the hearsay's reliability, outweighs Green's interest in confronting and cross-examining Havink. Rule 32.1 Advisory Committee's Note to the 2012 Amendment. The Court, therefore, will deny the Motion in Limine with respect to Green's request that the Court exclude Havink's hearsay statements.

**IT IS ORDERED** that the Opposed Motion in Limine Regarding Hearsay Evidence at Final Revocation Hearing and Request for Discovery, filed September 2, 2021 (Doc. 315), is granted with respect to Green's request for discovery materials, denied with respect to Dana Havink's hearsay statements.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Fred J. Federici
   United States Attorney
Renee L. Camacho
   Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

     *Attorneys for the Plaintiff*

Brian G. Grayson
Grayson Law Office, LLC
Albuquerque, New Mexico

-- and --

Daniel J. Tallon
Daniel J. Tallon, Attorney at Law
Placitas, New Mexico

     *Attorneys for the Defendant*